# CHARLESTOWN.

## RAILROAD COMPANY v. FOREMAN.

Submitted June 17, 1884—Decided September 27, 1884.

(*WOODS, JUDGE, Absent.)

1. The matter in controversy in the suit or proceeding, on which judgment is rendered, must not only be of the value of one hundred dollars exclusive of costs, but the controversy in relation to the matter of that value must be continued by the writ of error, to give the Supreme Court of Appeals jurisdiction. (p. 668.)

2. Though in a case, where a railroad company is seeking to condemn lands for its track, the defendant with a view to certain preliminary steps proposed to be taken by him waives for the time a right to have his damages assessed by a jury of twelve freeholders, yet when these preliminary matters are disposed of by the court's refusal to entertain the n, he may ask the court to have his damages assessed by such a jury, and his request should be granted. (p. 669.)

3. "The peculiar benefits to be derived with respect to such residue from the work to be constructed," which are to be excluded in estimating the damages to the residue of the tract (chapter 80 of Acts of 1882) are such benefits, as particularly and exclusively affect the particular tract of land, whereof a portion is to be condemned, and not advantages of a general character, which may be or are derived in common by the owners of land along the line of improvement or benefits derived by the country at large. (p. 672.)

*Counsel below.

4. Though the oath taken by a jury, who assess damages in a condemnation case, may not be in the exact form, in which such oath should be administered, yet, if it be apparent, that the jury had before them the proper matters for their consideration, and that the plaintiff in error could have suffered no damage because of any informality in the oath, the verdict ought not on such account to be set aside. (p. 671.)

5. In the trial of such a case it is not an error, for which the Appellate Court would reverse, that the circuit court permitted a witness to answer the following question against the protest of the railroad company: "State what in your opinion would be a fair compensation for the damages to the residue of the tract beyond the peculiar benefits, which will be derived in respect to residue from the work to be constructed." (p. 673.)

GREEN, JUDGE, furnishes the following statement of the case:

This was a proceeding under chapter 18 of the Acts of 1881, instituted by the Grafton and Greenbrier Railroad Company to take portions of the lands of numerous persons in Taylor county, through which said railroad would run. The land so taken was, as the application states, to be taken as the road-bed of said railroad; and ten days' notice that said railroad company would apply to the circuit court of Taylor county to appoint commissioners to ascertain what would be a just compensation to these persons for the land proposed to be taken of each of them for the purpose of constructing and operating this railroad, was duly served on all these persons including Lucas Foreman; and the written application was filed, and the motion to appoint these commissioners was docketed on the return day of the notice in the circuit court of Taylor county. The application stated among other things, that the applicant desired to take for the purposes of a road-bed a strip of land nearly parallel with and near to Tygart's Valley river off the west side of certain tracts of land in said county; and among these tracts named is a tract owned by Lucas Foreman, on which he then resided, stating the tracts of land on which it abutted. The application stated, that there were no liens on any of these tracts of land; and the applicant prayed the court to appoint commissioners to ascertain what would be a just compensation to each of the persons, on whom the notice was served, for the strip of land therein proposed to be taken from him.

This application was filed on July 26, 1882; and on the first day of August the court nominated thirteen disinterested freeholders, of whom the Grafton and Greenbrier Railroad Company struck off four, and all the landholders by their attorney struck off four leaving five, who were appointed commissioners to ascertain, what would be a just compensation to said land-owners named in said application for the lands proposed to be taken from them respectively by said railroad company and for damages to the residue of each owner's land beyond the peculiar benefit to be derived in respect to such residue from the railroad to be constructed and operated thereon by said railroad company, provided however that no damages should be ascertained for the construction of farm-crossings, fences or cattle-guards or for keeping the same in repair. Said commissioners, who at once in open court took the oath prescribed by law, were ordered to make report of their proceedings according to law.

On the next day these commissioners made report that in their opinion three hundred and fifty dollars was a just compensation to Lucas Foreman for so much of his real estate as was proposed to be taken by the applicant, describing the land so taken; and thereupon the Grafton and Greenbrier Railroad Company paid this three hundred and fifty dollars for Lucas Foreman into court. Lucas Foreman filed exceptions to this report, first, because the commissioners took no evidence on which to base their report; second, because they gave him no notice of the time when they would proceed to condemn this land and fix his compensation; and third, because the compensation fixed was inadequate. The court sustained these exceptions; and on motion of Lucas Foreman this report was recommitted to these commissioners with directions to hear such proof as the parties should produce before them, and report to the court. All these proceedings were had on August 2, 1882.

At another term of the court on November 7, 1882, Lucas Foreman filed his petition. It set out all the facts and proceedings above mentioned and proceeded as follows: "Your petitioner waives for the present his objections to the inadequacy of the amount allowed him as damages and his right

to have the same ascertained by a jury of twelve freeholders, and asks to file amended and additional objections to this report, because all the proceedings of these commissioners from beginning to end were contrary to law rendering their proceedings illegal and void;" and as such objections he submits, first, that no notice was given him or any one else of the time when the commissioners would enter on his land to assess his damages; second, that the statute provides that he or his attorney may attend and examine witnesses, read depositions and be heard in support of his rights, which rights he was denied; third, because they conducted their proceedings in a hasty manner, in that they went through his land condemned and assessed the damages upon it without his knowledge, all of which was unjust, unfair and illegal. He asks that the court set aside and declare null and void the proceedings and report thereunder of these commissioners. This petition was demurred to and during the same term, on November 15, 1882, the court sustained the demurrer and dismissed the petition at the cost of Lucas Foreman; and on his motion so much of the previous order as re-committed said report was set aside, and he waiving his exceptions thereto theretofore endorsed on the report, excepted to said report because of the inadequacy of the compensation therein allowed to him, and demanded that the question of compensation to be paid him be ascertained by a jury of twelve freeholders. To this demand the Grafton and Greenbrier Railroad Company objected; and the court overruled the objection and ordered the said compensation to be ascertained by a jury as demanded.

At another term of the court a jury of freeholders selected according to law were sworn "to well and truly ascertain what will be a just compensation to Lucas Foreman for the land taken from him by the Grafton and Greenbrier Railroad Company and for damages to the residue of his land beyond the peculiar benefits to be derived in respect to the residue of his land from the work to be constructed or the purpose, to which the land taken is to be appropriated, and a true verdict render according to the evidence." On April 3, 1883, the jury found the following verdict: "We, the jury, find for the defendant, Lucas Foreman, and assess his damages at

four hundred dollars." On another day of the same term, April 5, 1883, the Grafton and Greenbrier Railroad Company moved in arrest of judgment on this verdict, because the verdict did not respond to the whole of the question, which the jury was sworn to try and did try, and because the question they were sworn to try was not in accordance with the provisions of section 14 of chapter 18 of Acts of 1881 as amended by chapter 80 of Acts of 1882. The court refused to arrest the judgment on this verdict and rendered judgment in favor of Lucas Foreman against the Grafton and Greenbrier Railroad Company for fifty dollars with interest from April 3, 1883, till paid, and his costs about the trial expended, amounting to eighty-six dollars and eighty-five cents; and thereupon said railroad company paid said judgment and costs but entered its protest, that the same was illegal and erroneous; and the receiver of the court was ordered to pay to Lucas Foreman the three hundred and fifty dollars heretofore paid into court by the plaintiff.

Several bills of exception were filed during the trial; but all the questions raised by them are shown by the first and second bills of exceptions, which were as follows:

No. 1.

"Be it remembered, that upon the trial of this cause before a jury. and after the jury were sworn and impanneled as aforesaid, and after it had been proved to the jury that on the said residue of the tract of land of Lucas Foreman, there was a three foot vein of stone coal on a level with the grade of said railroad, and also a four foot vein of good stone coal at seventy feet above the former vein, and that there was also on the residue of said land valuable oak timber; the said Foreman introduced a witness, J. C. Lewellen, who testified that for the strip of land taken by said Grafton and Greenbrier Railroad Company, from said Foreman, on August 2, 1882, by condemnation, three hundred dollars would be a just compensation at the time it was taken, and that four hundred dollars would be a just compensation to him for damages to the residue of said tract. The said railroad company in cross-examination of said witness in succession, propounded the following questions:

"First question—Did you include in your estimate in

diminution of the damages to the residue of the land taken anything on account of benefits said Foreman will receive from the fact that on said residue he has valuable coal and timbers, that said railroad will put in the market?

"Fifth question—Did you include the fact of the existence of said timbers and coals in your estimate of the damages to the residue of said land in diminution of said damages to said residue?

"To all of which questions the said Foreman by his attorney objected and the court sustained his objections and refused to allow the witness to answer any of them, to which ruling of the court the said railroad company by its attorneys excepted and prayed the court that this its first bill of exceptions be signed and made part of the record, which is accordingly done.     •

"WILLIAM T. ICE,
"*Judge Presiding.*"

No. 2.

"Be it remembered that on the trial hereof before the jury, the said Lucas Foreman, on his part, introduced a witness who testified that two hundred dollars would be a just compensation for the strip of land taken by the railroad company; and thereupon the said Foreman propounded to said witness these questions:

"Question—State what in your opinion would be a fair valuation for the damages to the residue of said land beyond the peculiar benefits which will be derived in respect to said residue from the work to be constructed?

"To which question and answer thereto the said Grafton and Greenbrier Railroad Company objected, but the court overruled said objection and allowed the said witness to answer the same; the answer being: 'It would be not less than five hundred dollars; perhaps more;' to which ruling of the court the said railroad company excepted, and prayed the court that this, its second bill of exceptions, might be signed and made part of the record, which is accordingly done.

"WILLIAM T. ICE,
"*Judge Presiding.*"

To the judgment obtained on April 5, 1883, a writ of

error was awarded the railroad company by this Court on July 7, 1883.

*Martin & Woods* for plaintiff in error.

*M. H. Dent* for defendant in error.

GREEN, JUDGE:

Before considering the merits of the case, we must first determine whether this Court has jurisdiction. It is claimed that so far as the plaintiff in error is concerned, the amount in controversy is fifty dollars, as the plaintiff in error by paying the three hundred and fifty dollars into court admitted its liability for that amount, and the matter in contest now in this Court is only the amount of the judgment for the excess over this three hundred and fifty dollars assessed by the jury, that is, fifty dollars. The amount in controversy in this Court determines, it is true, the jurisdiction in this Court, and not the amount, which may have been in controversy in the court below, (*Rymer* v. *Hawkins*, 18 W. Va. 309). But if this Court should reverse the judgment of the circuit court and award a new trial, the jury may award in this new trial only fifty dollars. Then by section 21 of chapter 18 of Acts of 1881 p. 246-7, of the three hundred and fifty dollars paid into the court, three hundred would be paid back to the applicant, so that in point of fact he would by the reversal of this case be benefited three hundred and fifty dollars and might be benefited four hundred dollars, so that this sum of four hundred dollars is the real amount in controversy in this Court. It is not true then that the plaintiff in error does not now controvert that this three hundred and fifty dollars is a just compensation. He was willing to pay this only in case the defendant was willing to accept it as payment in full of his demands.

The counsel for the plaintiff in error assigns as an error in this case the fact, that the court overruled the objection of the railroad company to the granting of a jury to the defendant, Foreman, to assess his damages, after he had waived on the record all his exceptions to the report of the commissioners. The court below did not err in this, for the record

instead of showing he had waived this right shows that at all times he insisted upon all his rights including this. It is true, that in his petition filed on November 7, 1882, he says, that in order to present his objections by petition, " he waives for the present his objections to the inadequacy of the amount allowed to him as damages and his right to have the same ascertained by a jury of twelve freeholders;" but the circuit court at the same term dismissed this petition as an improper manner for the defendant to present his objections, and then at his request set aside the order re-committing the report to the commissioners, and the defendant waived his exceptions to this report, one of which was because of the inadequacy of the damages allowed to him, but at the same time he demanded that the question of the compensation to be paid to him be ascertained by a jury of twelve freeholders, and the court ordered it to be so ascertained. It was his constitutional right to have the amount of these damages so ascertained; and the record plainly shows, that he never intended to waive the right. He waived it temporarily, in order that he might first present other objections; but the court refusing to permit him to present these objections in the manner he wanted, he at once demanded such jury, and the court properly directed the damages to be so ascertained. .

The defendant in error insists as a counter assignment of error, that the court erred in sustaining the demurrer to his petition; but I am of opinion, that it did not err. So far as can be judged from the face of this petition, there was no necessity for filing it. The same objections to the commissioners' report, which it raises, could have been, as indeed most of them were, raised in the usual mode by exceptions to the commissioners' report.

From the argument of the counsel for the defendant in error in this Court I learn, what I could not have learned from the petition itself, that the object, which was intended to be affected by it, was to annul in some way the action of the Grafton and Greenbrier Railroad Company in paying into court the three hundred and fifty dollars for the defendant, Foreman, this being the amount of the damages reported by the commissioners. The counsel of the defendant in error argues, that as the commissioners gave to Lucas Foreman no

notice and afforded him no opportunity of being heard, when they assessed his damages, their report ought to have been regarded as an absolute nullity, and that the court ought not to have received the three hundred and fifty dollars of damages for Foreman named in the report thus permitting the plaintiff to take possession of his land. This may perhaps be all true; but if such a question could have been raised, and if the court might have refused to permit the commissioners to file such a report or to receive this three hundred and fifty dollars, still it is clear the court could not properly do so, unless the defendant, Foreman, objected to the receipt by the court of this report and of this money. Yet, though he was in court, when this report was returned on August 2, 1882, he made no objection to the receipt by the court of this report or of this three hundred and fifty dollars but then acquiesced therein, and contented himself with filing exceptions to the report. He raised no such objections, till he filed this petition on November 7, 1882; and even then we cannot discover from the petition, that he intended to raise any objection, and I learn it only from the argument of counsel in this Court.

In his argument the counsel for the defendant insists, that section 20 of chapter 18 of Acts of 1881 is unconstitutional, because it allows the applicant to take possession of the land, when it pays into court the amount reported as the damages by the commissioners, though there be an undecided contest as to whether this be a just compensation. But if this section be read in connection with section 22 of the same act which provides, that from the time when the just compensation is finally ascertained, the applicant shall have no right to such possession, till the whole of this just compensation is paid, it does not seem to me that these provisions of the law are unconstitutional. But I express no views on this question, as it is in no manner raised by the record in this case. But as bearing on this question I may refer to *Spencer* v. *R. R. Co.*, 23 W. Va. 442 to 447; *Campbell* v. *R. R.*, 23 W. Va. p. 449 and 450.

The second assignment of error in the petition for a writ of error is in these words:

"It was error to submit to the jury for determination the question which it was sworn to try, because—

"1st. It included damages to the residue of all lands owned by Lucas Foreman, and not simply damages to the residue of the tract from which said strip was taken.

"2d. It was not confined to the taking done on August 2, 1882, but embraced any and all takings by petitioner.

"3d. It failed to state when, or for what purpose, the land was taken.

"4th. It *included* when it ought expressly to have *excluded* damages on account of the construction of farm-crossings, fences and cattle-guards, and for keeping the same in repair."

This assignment of error cannot be sustained. Admitting that the oath of the jury might have been put in a better form by using the words "and for damages to the residue of his tract from which the Grafton and Greenbrier Railroad Company had taken a part in these proceedings for its use for such road-bed," instead of the words "and for damages to the residue of his land beyond the peculiar benefits" &c. Yet the record shows, that the plaintiff in error could have suffered no damages from the fact that the oath of the jury was not quite as specific as it might have been. From the record it is obvious, that the jury considered and decided exactly the same questions they would have decided, had the oath been administered in precisely the form in which plaintiff's counsel insists it should have been administered, if we except what is set out in the fourth of his objections to this oath. It appears to me, that the oath of the jury ought not to have "expressly excluded damages on account of the construction of farm-crossings, fences and cattle-guards and for keeping the same in repair." The counsel for the plaintiff insists that this should have been in the oath because of the amendment of section 14 of chapter 18 of Acts of 1881, which was made by chapter 80 of Acts 1882. This amendment is: "Provided, that if private property is proposed to be taken by a company incorporated for the construction of a railroad, that no damages shall be ascertained for the construction of farm-crossings, fences or cattle-guards or for keeping the same in repair. And in all cases where the property taken under this chapter is by a railroad company

and is land which has been cleared and fenced, the railroad company shall construct and forever maintain suitable fence-crossings, cattle-guards and fences on both sides of the land thus taken; and no such railroad shall be used for the transportation of freight and passengers, until such fences, farm-crossings and cattle-guards are built and constructed."

This provision on its face was obviously intended to be considered by commissioners or by a jury in assessing damages to a land-owner, whose land has been taken, and instructs them as to the manner of assessing damages in certain cases. But it was not intended and does not in any manner affect the proper oath to be administered to the commissioners or jury. I conclude therefore that the plaintiff's second assignment of error cannot be sustained.

The appellee claims that portions of the act of 1882 are unconstitutional; and he says they were held erroneously by the circuit court to be constitutional. To sustain his argument on this point he refers to Judge Paull's opinion in the case of the *C. & O. R. R. Co.* v. *Patton,* 6 W. Va. 151–2. The record however fails entirely to show whether the circuit ocurt held the act to be constitutional or unconstitutional, and also fails to show, whether the jury under instructions of the court or otherwise allowed in ascertaining the defendant's damages for the construction of farm-crossings and cattle-guards or for keeping the same in repair. Under such circumstances I decline to consider at all the question, whether or not this law be constitutional. It is in no manner involved in this case.

The court properly refused to permit the questions contained in the first bill of exceptions to be propounded. It is well settled, that the benefits, which may be considered in reduction of damages in such a case as this, are confined to such as are direct and peculiar to the owner of the land, excluding those which he shares with other members of the community, whose property is not taken. The reason for this is obvious; for if their general benefits would be thus offset against actual damages done the owner of the land, it would impose on him an unequal burden for the common good, exacting in effect contribution from those whose property is taken, and relieving others who derive an equal

advantage from the public work. Many authorities might
be cited to sustain these views. As they are, so far as I
know, universally accepted, it will suffice here to refer to
*Mitchell* v. *Thompson et al.* 21 Gratt. 178–9; *Railroad Co.* v.
*Tyree,* 7 W. Va. 699. The questions named in the first bill
of exceptions were intended to call out from the witness an
estimate of their general benefits, which ought not be con-
sidered by the jury in assessing damages, and these ques-
tions the circuit court properly refused to allow to be put.

As to the question propounded to the witnesses named in
the second and third bills of exceptions, which the court per-
mitted against the objection of the plaintiff, it seems to me
to be a proper question to be asked and answered. The court
did not err in permitting it to be put and answered. It was:
" State what in your opinion would be a fair value for the
damages to the residue of said land beyond the peculiar ben-
efits which will be derived in respect to said residue from the
work to be constructed." Perhaps a better mode of con-
ducting the examination of the witnesses would have been to
have first asked: " What would be a fair value for the dam-
ages to the residue of the tract of land excluding from your
estimate all benefits?" and then asked: " What amount
would the witness estimate should be allowed as an offset to
the railroad company because of the peculiar benefits, which
the owner would derive in respect to the residue of his land
not taken, specifying what he estimates as such peculiar ben-
efits?" The court could thus see whether he was regarding
as peculiar benefits what were really general benefits. But
it seems to me there is no sound objection to the propounding
of the question in the manner in which it was propounded in
this case. For on cross-examination the applicant could by
asking the proper questions show what the damages were in
the opinion of the witness to the residue of the land excluding
benefits; and what offset he allowed for peculiar benefits, and
what he regarded as peculiar benefits; and thus the case
would be before the jury, just as it would be, if the question
had been propounded by the defendant in the most approved
manner. And if the witness should have improperly consid-
ered certain benefits as peculiar, which were general, the
court could direct his evidence, so far as it was based on

these general benefits, so be disregarded.    There is no objection to taking the opinion of witnesses as to either the amount of damages or as to the amount of the benefit.    It is the usual practice in this State and Virginia, and though not approved in some States, it is approved in many States.    See *Vandine* v. *Burpee*, 13 Mec. 288; *Brainard* v. *Boston and N. Y. R. Co.*, 12 Gray 407; *Swann* v. *Middlesex*, 101 Mass. 173; *Jacksonville, A. & St. L. R. Co.* v. *Caldwell*, 21 Ill. 75; *Cairo & St. L. R. Co.* v. *Woolsey*, 85 Ill. 370; *Snyder* v. *Western Union R. Co.*, 25 Wis. 60; *Deedrick* v. *Northwestern Union R. Co.*, 47 Wis. 662; *Snow* v. *Boston & M. R.*, 65 Me. 230.    We deem it unobjectionable.

There being no errors committed by the court in the trial of the case, it did not err in refusing to arrest judgment on the verdict of the jury, as their verdict did sufficiently respond to the matter before them for trial.

The judgment of the circuit court rendered April 5, 1883, must be affirmed; but the record showing that this judgment including the costs of the defendant in the circuit court was at once paid to the defendant, the only judgment remaining to be entered here is a judgment that the defendant in error recover of the plaintiff in error his costs in this Court expended.

AFFIRMED.