DAVIS v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division One, December 23, 1893.

1. **City:** STREET GRADING: CONSEQUENTIAL DAMAGES: CONSTITUTION. The owner of a lot fronting on a public street in a city, is entitled to consequential damages, arising from the change of the natural surface of the street to a legally established grade, under the constitutional provision, that, "private property shall not be taken or damaged for public use without just compensation." (Art 2, sec. 21.)

2. ———: ———: ———: ———. Such property owner, however, is not entitled to consequential damages to his improvements thereon by reason of the city changing the street to a grade previously established.

*Appeal from Jasper Circuit Court.*—HON. M. G. MCGREGOR, Judge.

REVERSED AND REMANDED.

*R. T. Railey* for appellant.

(1) It is conceded that the grading, etc., in front of plaintiff's property was done in a workmanlike and proper manner. It is averred in petition "that said embankment is of a permanent character and was constructed by the defendant under a license granted to the said defendant by the said city of Carthage." The defendant was duly authorized by said city of Carthage to cross McGregor street with its road. The court, therefore, committed reversible error in refusing defendant's instruction number 9. (2) Plaintiff

improved his property in 1884, two years after the grade of McGregor street had been established. When he moved on said real estate in 1884, it was a rough lot, rather in the woods, was stony, and the only improvements thereon at the time was a small box house which was afterwards torn down and used in constructing the present improvements. The undisputed evidence shows that the improvements were constructed upon the original surface of the lot without any reference to the grade established by the city in 1882. The grade of McGregor street, having been established in 1882; defendant having acquired the legal right to cross said street; the grading having been done in front of plaintiff's property in a workmanlike manner, under a license from the city, and for the benefit of the latter, on the grade established by it in 1882; and plaintiff having made his improvements two years after the establishment of said grade, on the original surface, we insist that our demurrer to the evidence should have been sustained. *Mfg. Co. v. Railroad*, 113 Mo. 308; *Denver v. Vernia*, 7 Col. 113. 2 Dillon on Mun. Corp. [3 Ed.], sec. 995. (3) When authority is conferred by law to grade, level and improve streets and highways, and proper care and skill are exercised in performing the work, those engaged in the latter are not answerable for consequential damages. *Mfg. Co. v. Railroad*, 113 Mo. 308; *Radcliffe v. Mayor*, 4 N. Y. 203; *Uline v. Railroad*, 101 N. Y. 108; *Conklin v. Railroad*, 102 N. Y. 110; *New Haven v. Sargent*, 38 Conn. 55; *City Council v. Townsend*, 80 Ala. 494; *Seldon v. City*, 10 S. Rep. (Fla). 458.

*T. B. Haughawout* for respondent.

(1) Prior to the adoption of section one of article two of the constitution of 1875, the city could not be

held liable for damages necessarily attending upon the proper and skillful execution of a plan by the city council, but was liable alone for damages resulting alone from the negligent and unskillful execution of the work done in pursuance of the plan; that has been changed by the section of the constitution above cited, which reads as follows: "Private property shall not be taken or damaged without just compensation," and when property is damaged by establishing a grade of a street or by lowering or raising the grade of a street previously established it is damaged for public use within the meaning of the constitution; such is the language used by this court in the case of *Werth v. City*, 78 Mo. 107, and particularly at page 110. See, also, *Sheehy v. Railroad*, 94 Mo. 574; *City v. Howard*, 22 S. W. Rep. 1159. (2) When a railway company in constructing its road along or across a street, although done under a license or ordinance granted by a city, they are held liable the same as if the city had performed the work. *Sheehy v. Railroad, supra.* (3) The ordinances which appellant relies on, granting the privilege to construct its road across the streets of the city of Carthage, expressly provides that the track shall be laid on the grade established by the city of Carthage. (4) All the authorities cited by the appellant in its brief have no application whatever to the case at bar.

MACFARLANE, J.—This action is for damages done to the plaintiff on account of grading, by defendant, of McGregor street, in the city of Carthage, in front of his property fronting on said street. The petition charged that plaintiff was the owner of lot 175 fronting on the east side of McGregor street, except a small portion thereof which is described; that for the purpose of raising the grade of said street, in the year 1890, defendant constructed in said street, to its full

width and about eight feet high, in front of plaintiff's property, an embankment of a permanent character, which was done under a license granted defendant by the city of Carthage, a duly incorporated municipal corporation, by which his property was damaged $500.

The answer admitted the ownership of the lot, and that the west end thereof abuts on said street, and charged that the grade of McGregor street was duly established by an ordinance of said city in the year 1882, which was entered in the grade book of said city and was a part of the public records of the city; that during the year 1890 defendant being desirous of running a spur of its railroad across said street, south of plaintiff's lot, said city of Carthage, through its council, authorized it to do so upon condition that it would raise the grade of the street up to that established by the city; that defendant so constructed the grade by the direction and under the requirement of said city, and wholly for its benefit.

Plaintiff replied, that defendant agreed with the city of Carthage to repair the damage that might be done to the street, in constructing its railroad across it, and pay all damage to property owners resulting therefrom. There were other issues made and tried, but no point is made on them and they need not be considered.

On the trial it was shown, from the charter and ordinances of the city of Carthage, that it had power to "grade, pave or otherwise improve and keep in repair all roads, streets and bridges within the city limits, and that it did establish the grade of McGregor street in the year 1882; that by an ordinance duly passed and approved in 1890 the defendant was authorized to construct its road across said street south of, and adjoining, the property of plaintiff, and other streets.

Defendant was required, as a condition, to construct, erect and keep in repair, suitable crossings or bridges at the intersection of its said railroad track with each and every one of said streets and shall grade the approaches to such crossings or bridges, on both sides of the track.''

The crossing of McGregor street was between Eldorado and Limestone streets and on each side of the railroad crossing the natural surface of the ground. was higher than at the point of crossing. The crossing of the street by the railroad was some thirteen feet below the natural surface of the ground, requiring a bridge above it for travel on the street. The bridge and its approaches were made in a careful and skillful manner on the established grades, which raised the street in front of plaintiff's property from two to six feet above the natural surface of the ground, upon which plaintiff's improvements were made as variously estimated by the witnesses. Plaintiff improved his property in 1884. Plaintiff offered evidence tending to prove that when he improved his property he had no knowledge that a grade had been fixed.

The court of its own motion gave the following instruction:

''The court instructs the jury that if they believe from the evidence that the plaintiff, in 1890, was the owner of lot 175 in North Carthage, Jasper county, Missouri, except that part of said lot described in defendant's answer which had theretofore been sold to defendant, and that said lot and the part thereof so owned by plaintiff fronted on McGregor street in the city of Carthage, and that defendant, in building its railroad across McGregor street, near said premises and lot, built the same below the grade of said McGregor street, and in constructing a bridge over and above its railroad on said street, and approaches to said bridge,

filled up said McGregor street and raised the same in front of plaintiff's said lot, and damaged plaintiff's said lot, and depreciated the value thereof, than the jury should find the issue in favor of the plaintiff."

Defendant asked, and the court refused to give, the following instructions:

"If the jury believe from the evidence that the city of Carthage, through its council, in 1882, or prior thereto, established the grade of McGregor street, and that the work done by said defendant adjacent to said lot 175, upon said street, was done with the consent and by the direction of said city of Carthage; that said work was performed in a workmanlike manner, and simply made said street to conform to the grade established by said city aforesaid, along said street, and in front of plaintiff's said lot 175, then the plaintiff is not entitled to recover in this action, and the jury should find for the defendant."

The ruling of the court in giving and refusing these instructions sufficiently presents the only question submitted to us.

I.   Is the owner of a lot fronting on a public street entitled to consequential damages arising from the change of the natural surface of the street to a legally established grade?

Neither the statute, nor the charter of the city of Carthage, nor its ordinances, prescribed any rule for compensating the owner for the damages suffered in such cases; and it was well settled before the adoption of the constitution of 1875 that a municipal corporation incurred no liability to the owner of a lot fronting upon a public street for damages resulting from a change of an established grade, if the improvement was executed in a careful and skillful manner.   *Van De Vere v. Kansas City*, 107 Mo. 83, and cases cited.  The right, then, if one exists, must be found under sec. 21,

art. 2 of the constitution which provides "that private property shall not be taken or damaged for public use without just compensation." Under that section it was declared, soon after the adoption of the constitution, that "when property is damaged by establishing the grade of a street, or by raising or lowering the grade of a street previously established, it is damaged for the public use within the meaning of the constitution." *Werth v. Springfield*, 78 Mo. 110. This declaration, though but a dictum in that case, has been quoted approvingly in subsequent cases. *Sheehy v. Cable R'y. Co.*, 94 Mo. 75; *Gibson v. Owens*, 115 Mo. 258.

In none of the cases cited was the question of changing the original surface of the street to an established grade involved; nor do we find that the exact question has ever been decided by this court. Judge DILLON in his valuable book on municipal corporations takes the position, which he supports with his usual fairness and ability, that a city would not, under such constitutional provision, be liable for such damages. His conclusion is expressed in the following language: "In view of these considerations, it seems to us clear that for the original establishment of a grade line and the reduction of the natural surface of the street for street purposes to such line, there is no legal right or even natural equity in the dedicator or his assignee, to compensation." 2 Dillon Mun. Corp., secs. 995 *a*, 995 *b*. The learned author agreed that some of the decisions under the constitutional provision, upon the exact point, gave it a scope greater than the one he suggests.

While the reasons given for the nonliability of the city in such cases have much force, indeed are quite conclusive when applied to the larger cities of the country, which are enlarging their territory to accommodate their increasing population and business, and in which streets

are generally graded, yet we do not think that the rule suggested would operate justly to property owners in towns and smaller cities, in this state, in which the necessity for such grading, or the ability to pay for it, may never arise. In municipalities of this class, in which most of the towns and cities of this state fall, the dedicator and his assigns should only be held to give implied assent to such improvements as would put the street in a condition for safe and reasonably convenient use upon or near the natural surface considering the peculiarities of the locality. If damages should be assessed in opening new streets upon the theory, as claimed, that the city should, at any time thereafter, have the right without further compensation, to raise or lower the grade as the convenience or necessity of the public might demand, the cost in damages in many cases would virtually prohibit such improvements. In a majority of towns and cities in this state the natural surface is adopted and used by the public, in making their improvements, as the street grade, and raising or lowering it to an artificial grade might be more damaging than changing one artificial grade to another. If public convenience at any time requires the grading of a street, it is but just that the public should bear the burdens of having it done.

We are of the opinion, therefore, that the rule which allows compensation for consequential damages to property, caused by a material change of grade from the natural surface of the street, is the most equitable to the property owners and best conserves the public interest and this rule is generally adopted under similar constitutional provisions. *Harmon v. Omaha*, 17 Neb. 548; *City Council v. Townsend*, 80 Ala. 491; *McElroy v. Kansas City*, 21 Fed. Rep. 257; *Railroad v. Williamson*, 45 Ark. 436; *Reardon v. San Francisco*, 66 Cal. 492; *Atlanta v. Green*, 67 Ga. 386; *Fort Worth v. Howard*, 22

S. W. Rep. (Tex.) 1059.

II.    Is a property owner entitled to consequential damages to his improvement thereon by reason of the city changing the street to a grade previously established? We think not. When the authorities of a city are of the opinion that the proper improvement of any of its streets may require that they should be graded, though the city may not, at the time, be in a condition to incur the expense, we think it would be entirely proper, in order to protect itself against increased damage and cost, that it should establish a grade to' which subsequent improvement of adjacent property could be made to conform. If this is done and the grade so established is made, a matter of record ascertainable by property owners, they should be bound by it.

The decisions of this court show that the constitutional provision is not broad enough to cover every possible damage that may result to a property owner, from making public improvements. The damage has, in some cases, been limited to such as directly and especially affect the property itself or some right or easement connected therewith. *Van De Vere v. Kansas City*, *supra*. To that extent the common law has not been changed. Independent of the constitution, the right of a city to change the grade of its street without liability to the owners of adjacent property is unquestioned. The ground of the doctrine is thus stated in a leading case: "Those who purchase house lots bordering upon streets are supposed to calculate the chance of such elevations and reductions as the increasing population of a city may require, in order to render the passage to and from the several parts of it safe and convenient, and as their purchase is always voluntary, they may indemnify themselves in the price of the lot which they buy, or take the chance of future improvements, as

they shall see fit  *  *  *  [They are] presumed to foresee the changes which public necessity or convenience ·may require.''  *Callender v. Marsh,* 1 Pick. 418.

Now, while the constitution intervenes and modifies the common law rule so as not to require the owner to ·"calculate chances" of changes in the grade, it is·not broad enough to allow compensation to one who knowingly, or without investigation, makes his improvements on a grade different from one previously established.  *Denver v. Vernia,* 8 Pac. Rep. (Col.) 656, filed November 16, .1885.  *Harman, v. Omaha,* 17 Neb. 549; *City Council v. Townsend, supra.*

Plaintiff's damages should have been confined to that done the lot without reference to any improvement placed thereon after the grade had been established.  Reversed and remanded.  All concur, except BARCLAY, J., who is absent.