# CHARLESTON.

## BLAIR *v.* CITY OF CHARLESTON.

### (DENT, JUDGE, *concurring.*)

### Submitted September 14, 1896—Decided December 31, 1896.

1. MUNICIPAL CORPORATIONS—*Change of Grade—Damages.*

   If a street be opened and used upon the natural surface as a grade line, and it is recognized and treated by a city or town as a public street, and owners of lots upon it build with reference to such natural grade line, and it is changed, the city or town is liable to lot owners for damages consequential upon the change of grade, though no grade for the street was ever adopted by the municipality, under section 9, article LII of the Constitution. Such natural grade thus became the established grade.  (p. 64.)

2. MUNICIPAL CORPORATIONS—*Paper Grade Line—Damages to Buildings.*

   Though such owner purchase after the municipality has established a paper grade line, but before actual physical grading conforming a street to that line, that will not preclude his recovery for damages to his lot; but he cannot recover for damages to buildings erected after the adoption of such paper grade. He must conform to such grade line. (p. 68.)

3. DAMAGES—*Measure of Damages—Change of Grade.*

   The measure of damages for injury to property from change of a street grade line is that sum which will make the owner whole; that is, the diminution of the market value from the change. If the market value is as much immediately after as immediately before the change, no damages can be recovered.  (p. 69.)

4. DAMAGES—*Estimating Damages—Change of Grade.*

   In estimating damages to property from change of grade in a street, all damage and injury arising from the change causing a diminution in the value of the property are to be regarded, abating all special benefits to the property enhancing its value arising from the change of grade, but not general benefits shared by the property owner in common with others in the community at large. The question is one of damage, less special, but not less general, benefit. (p. 70.)

5. PUBLIC IMPROVEMENTS—*Special Benefits to Property—General Benefits to Property.*

   What are special benefits? If property is enhanced in value by reason of a public improvement, as distinguished from the general benefits to the whole community at large, it

is speciailly benefited, and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may, to greater or less extent, be likewise specially benefitted. In other words, it is not only such benefits as are special, or limited to the particular property, thereby excluding the consideration of such benefits as are common to other property similarly situated, but it is such benefits as that the particular property is by the improvement enhanced in value—that is, specially benefited—that are to be considered. If a piece of property is enhanced in value, its enhancement, or in other words, benefits to the property, cannot be said to be common to any other piece of property specially enhanced in value, and it is thus specially benefitted within itself, and irrespective of the benefit that may be conferred by the improvement upon other properties.   (p. 70.)

6.   EVIDENCE—*Opinion Evidence—Damages.*
     Opinions of witnesses as to the value of property before and after a change in a street's grade are admissible as evidence in actions against municipal corporations for damage flowing from such change.   (p. 73.)

Error to Circuit Court, Kanawha county.

Action by A. C. Blair against the city of Charleston. Judgment for defendant, and plaintiff brings error.

*Reversed.*

W. S. LAIDLEY, S. C. BURDETT and A. C. BLAIR for plaintiff in error.

HARRISON B. SMITH and COUCH, FLOURNOY & PRICE for defendant in error.

BRANNON, JUDGE :

America C. Blair brought an action in the Circuit Court of Kanawha county against the city of Charleston to recover damages for injury to her lot consequent upon grading Morris street, the work placing an embankment of six feet height above the natural surface of her lot, leaving it and her house that much lower than the street, rendering it difficult of access, causing the lot to be wet, and the cellar to have water in it.   Verdict and judgment for city.

The law books tell us that, for grading streets, or changing grade, or other lawful works done by a city or town, no action lies for consequential injuries to adjoining property if the work be done skillfully and not negligently; but we must not be misled by the text of the older books

in this matter, as they lay down the rule under constitutions saying that private property shall not be taken for public use without compensation, and there can be no liability where merely damage to adjoining property results from the work, but only when the property is taken, or the injury is equivalent to its taking. But our Constitution of 1872 added the word "damaged" to the language of the former Constitution, so that the clause in section 9, article III, is "Private property shall not be taken or damaged for public use without just compensation." Under this change it is settled that, where once the grade has been actually established, and improvements on property have been made with reference to that grade, and that grade is changed by raising or depressing it, and damage results to the property, the municipality must answer it, though the work was free from negligence. *Johnson* v. *Parkersburg*, 16 W. Va. 402; *Hutchinson* v. *Parkersburg*, 25 W. Va. 226; Dill. Mun. Corp. § 996b; Beach, Mun. Corp. § 1141. But it is said that this unquestioned rule does not determine the case in hand, for the reason that a system of grades for the city had been adopted long before the plaintiff owned this property, or began the construction of her house upon it, which system was of record in the proceedings of the council, which she knew, or might have known, before acquiring the lot or building. Morris street was a public street before the adoption of this ordinance or paper grade, and that grade · existed only on paper, or in contemplation, until after the plaintiff purchased, and was then physically established, working the injury sued for. Is it law that the first grading—that is, physical grading—can be done with impunity, no matter how much it hurt the adjoining landowner, and that the constitution gives compensation only when that is abandoned and another grade substituted? Let us view this question as to the land alone, separate from the house. There is the constitution, saying, without any such exception, that the citizen's property shall not be damaged without paying him. But, in applying it, is there reason to make such exception? It may be said that, when the city acquired land for the street, whether by condemnation, purchase, or dedication, grading and consequent damages were contemplated and included, and thus the owner and his

alienees are barred from damages. If acquired by condemnation, that would be a defense, as the compensation pays for the land actually taken and damages to the residue. If acquired by purchase or dedication, the seller or dedicator would contemplate, presumptively, a grade following the natural surface; at any rate, not one grievously injuring the residue of his property. Suppose a man sells or gives land for a street. If the grade is at once made, he has no claim. It is opened and used for years on a surface grade, and then a grade is made gravely injuring him. Is there any reason why he should not be compensated? By the use of the street in its natural grade, the city has adopted it, and people may improve with reference to it; and, if it abandon that grade, so used, and substitute another, it ought to be regarded as an alteration of an established grade. Otherwise, landowners must wait indefinitely before improving; for, if they do not, they may be ruined by change of grade. The constitution surely does not mean this.

This question has been up in states having similar provision in their constitution or laws to ours. In *City of Bloomington* v. *Pollock*, 141 Ill. 351 (31 N. E. 146), the court said that it was immaterial whether such grading was done under an ordinance establishing a grade in the first instance, or under an ordinance abandoning the grade, and the fact that the grade was fixed before the plaintiff's purchase was no defense to an action for damages. In *Davis* v. *Railroad Co.*, 119 Mo. 180 (24 S. W. 777), it is said by the court that the dedicator should only be held to give implied consent to improvements such as would put the street in a condition safe for use on the natural surface, and the syllabus and opinion hold that an owner of a lot is entitled to consequential damages from the change of the natural surface to a legally established grade. Approved in *Hickman* v. *City of Kansas*, 120 Mo. 110 (25 S. W. 225). In *Borough of New Brighton* v. *United Presbyterian Church*, 96 Pa. St. 331, it was contended that as the owner of ground had laid it out in lots, and the town had never fixed grades, it was not liable for grading the first time, but it was held that a change from the natural grade was such a change as called for damages. The court said: "A change from the natural grade is a

change of grade, just as much so as if changed from a grade previously made by the authorities. When the borough accepted the street, she took it as it then was, in width, line, and grade. The statute, in giving compensation, carrying out the constitution, is remedial. It gives damages where none before could be recovered. It should receive a liberal construction to effect its object." In *Jones* v. *Borough of Brighton*, 144 Pa. St. 638 (23 Atl. 252), it was held that a land owner who lays out and dedicates a street to public use is not precluded from damages for a change of grade, at least where the change is not made for several years after the dedication, and is an act separate from the opening of the street, as it is in the case in hand. So in *Pucy* v. *City of Alleghany*, 98 Pa. St. 522. These principles are approved in *O'Brien* v. *Philadelphia*, 150 Pa. St. 589, (24 Atl. 1017.)

But counsel say that the Pennsylvania constitution is that compensation is to be given for damages by construction and enlargement of works, highways, etc. ; covering, thus, the original construction. But I answer that our Constitution is intended to cover the whole scope of injury, and include any act working the injury, and that it is not limited to enlargement or alteration. In Missouri, the clause is twice held to give the right to damages when the property is injured "by establishing the grade of a street, or by raising or lowering the grade as previously established." *Hickman* v. *City of Kansas*, 120 Mo. 110 (25 S. W. 225.) The Massachusetts statute gives pay for damages "by reason of any raising or lowering, or other act done in repairing." Pub. St. Mass. c. 52. § 15. It was held, in *Snow* v. *Inhabitants of Provincetown*, 109 Mass. 123, that where no grade is established, the establishment of one afterwards is a change within the statute. (Such was the case here.) And where a street was laid out in 1861, and a grade was established, but the street was not built at such grade, and the city, by repairs and otherwise, recognized the existing grade, and in 1877 the street was brought to the grade originally established, it was held actionable, because this change was not a part of the original construction of the street. *City of Cambridge* v. *County Com'rs of Middlesex*, 125 Mass. 529. In *Aldrich* v. *Board*, etc., 12 R. I. 241, the owner was given damage

for a change of grade, though the first grade had never been formally established by the aldermen. It was enough that the street had been used and worked.

Morris street has been a street, I gather from the ordinance recognizing it in 1872, before that date, and presumably treated by the city as such, and used by the public by a grade of the natural surface or an artificial one. In 1872 a grade line is fixed for it on paper, and commencing work in 1891 or 1892 the street is by physical grading made to conform to it. If improvements were made on lots before the paper grade line of 1872, while the street was used and recognized by the city on the natural grade prior to 1892, while the city invited improvements upon it by adopting it, and then change grade physically, where is there reason for excluding lot owners from compensation for damages consequent upon the change of grade. It would be a case falling under the two Massachusetts cases first cited, and under the Illinois, Missouri and Rhode Island cases.

There is a case in Kansas *contra. Interstate R. R. Co.* v. *Easley*, 46 Kan. 197. So *Sargent* v. *Tacoma*, 12 Wash. 212. The case of *Folmsbee* v. *Amsterdam*, 142 N. Y. 118, is referred to by the city's council as holding that there is no inhibition on grading a street until the grade has been established and graded. There a statute charter made a city liable for change of grade "when the grade of a street has been established and the street graded accordingly." There the very letter required the street to have been established and graded; and, moreover, the case strongly sustains the position I take, as it holds that "to establish the grade of a street, within the meaning of said charter, it is not essential there should be a formal ordinance. It may be established by long use and the acquiescence and recognition of the municipality." In *Dalzell* v. *City of Davenport*, 12 Iowa 437, the letter of the act giving damages limited the recovery to a change from "a grade established by the city engineer," and therefore has no force here. The case of *Henderson* v. *City of Minneapolis*, 32 Minn. 319 (20 N. W. 322), was based on the law, without regard to the change in the constitution, as the opinion shows. So with *Selden* v. *City of Jacksonville*, 28 Fla. 558 (10 South. 457). It related to a constitution de-

claring that private property should not be "taken or appropriated for public use without compensation," not to one having the word "damaged," like ours. *City of Anderson* v. *Bain*, 120 Ind. 254 (22 N. E. 323), and other Indiana cases cited, are on statutes giving damages in terms for change of established grade. Justice Brewer, in *McElroy* v. *Kansas City*, 21 Fed. 257, said, under such a clause, that damage in establishing or lowering or raising a grade was actionable. Upon the above authorities I think it safe to say that, if a street is a public street of a town, though no grade for it was ever fixed by the town, but it is used upon the natural surface grade for any considerable time, and improvements have been made, upon lots lying upon it, with reference to such grade, before any grade line is established, and it is changed to the damage of such lots, the town or city is liable therefor.

But suppose, as in this case, that a grade line be established, and then, before the street is graded to conform to that line, one purchases a lot on it; is he barred from damage for injury to his lot from the change of grade? His grantor, owning before the paper grade, would not be: Shall he be, simply because he purchased? If so, the one is prevented from selling; the other, from buying. The actual change may never be made. The case of *City of Denver* v. *Vernia*, 8 Colo. 399, (8 Pac. 656) so holds. But I do not think this can be shown by other cases. It is not the making of the paper grade that inflicts the injury, but its application to the ground. It is the direct physical disturbance of a right which the owner had enjoyed in connection with his property that gives action. *Rigney* v. *City of Chicago*, 102 Ill. 64 (point 6), approved by Justice Harlam in *City of Chicago* v. *Taylor*, 125 U. S. 160 (8 Sup. Ct. 820.) See *Eachus* v. *Railway Co.*, 103 Cal. 614 (37 Pac. 750); *Ogden* v. *Philadelphia*, 143 Pa. St. 430, (22 Atl. 694); *Brown* v. *City of Lowell*, 8 Metc. (Mass.) 172; Dill. Mun. Corp. 1225, note. In *Jones* v. *Borough of Bangor*, 144 Pa. St. 638 (23 Atl. 252,) it was held that it is the physical, not the paper, change which confers the right to damages, and that the damages belong to him who is owner at the time of actual grading; and it is further held, when one becomes owner after the municipality has ordained a change in the grade, the fact that his purchase

is made with the knowledge and understanding, on the part of both vendor and vendee, that the street will be made eventually to conform to the new grade, does not operate to relieve the municipality from liability. In *Page* v. *City of Boston*, 106 Mass. 84, one purchased after an ordinance to change grade, and it was held that the purchaser could sue, and was the right one to sue, for damages; he owning at the date of the work. Lewis, Em. Dom. § 667.

How is it as to buildings erected after the city has adopted grade lines? The owner erects them with his eyes open to them. The city has the undisputed right to adopt them. If it could not, it would not be able, under such a constitutional provision, to protect itself against immense damages. It may adopt them, and every one must conform to them, however inconvenient. It is a law-making power. The city cannnot grade all streets to the line at once. In *Groff* v. *Philadelphia*, 150 Pa. St. 594, (24 Atl. 1048,) it was held that, where an owner erected a house on his lot after confirmation of a plan fixing the grade of a street, he was entitled to recover for injury to the lot, but not to the house. So in *Davis* v. *Railroad Co.*, 119 Mo. 180 (24 S. W. 777.) An ordinance of Charleston required any one about to build to get the grade from the city engineer. This is public law of the city, which every one is bound to know. So it was in Denver; and in *City of Denver* v. *Vernia*, 8 Colo. 399, (8. Pac. 656,), it was held that any one building must conform to the grade line, or, failing, could not recover. I remark that the city law applies to building, prohibiting the act of building without conforming to the grade line. Not so, however, as to buying lots. No prohibition or condition as to that. This is another reason for allowing recovery in one case, not in the other. Therefore, no damage could be allowed Mrs. Blair for injury to buildings. But if, in fact, the plaintiff or her husband made application to the engineer for grade, and he gave the wrong one, any damage as to her improvements, traceable and attributable to the error, would be recoverable.

What is the measure of damages in such cases? Shall there be set off against the damage benefits from the change of grade? What benefits? Benefits peculiar to

the property, as in condemnation cases, as also those received, in common with others, by this property? The courts seem to ask the question, has the plaintiff's property been damaged on the whole? If so, he gets that damage; if not, he gets nothing. I think the rule laid down in *Stewart* v. *Railroad Co.*, 38 W. Va. 438 (18 S. E. 604,) is applicable, and as good as we can get. The measure of damages is such a sum as will make the owner whole; that is, the depreciation of the market value of the lot caused by the change of grade. If the fair market value of the lot is as much immediately after the change of grade as immediately before, no recovery can be had. Lewis, Em. Dom. 471; note to *Railroad Co.* v. *Waldron*, 88 Am. Dec. 118; *Symonds* v. *Cincinnati*, 45 Am. Dec. 532. In arriving at the result it is proper to consider the expense of adjusting the property to the new grade, the cost of filling, injury to trees, or raising houses, where the damage to houses is included,—in short, all things causing a diminution in value of the property. *City of Omaha* v. *Kramer*, 25, Neb. 489 (41 N. W. 295); note to *Railroad Co.* v. *Waldron*, 88 Am. Dec. 114.

But, while damages are to be given the owner, his benefits are not to be forgotten; for we must set off benefits against damages. What benefits? Peculiar, not general, benefits; that is, not benefits which the owner derives from the improvement in common with the public at large, but only such benefits in respect to his property as the law calls "peculiar benefits," since for the general benefits the owner pays taxes along with others. *Kanawha Co.* v. *Turner*, 9 Leigh, 313; *Railroad Co.* v. *Foreman*, 24 W. Va. 662. But the question of what are peculiar benefits is one of difficulty. They are said to be those that particularly and exclusively affect the particular property. This is as near a definition as we can give, but does not solve the exact question in this case. The authorities conflict, or are indefinite. Now, we can clearly say that, if the market value of the property is as much after the improvement as before, no damages can be recovered. But if we apply this rule, we inevitably charge benefits that are given the property by the improvements which are not confined peculiarly to it alone, but benefits which all the property along the line of improvement derives; for, in

fixing the market value after the improvement, it seems impossible to eliminate the advantage conferred on it by the improvement. The market value is its value with that improvement. We must therefore say whether we can charge against damages, not merely benefits limited only to the particular property, as the drainage of a swamp, or greatly better access to it, but also the enhancement of value merely from the property's being on the line of improvement, and enjoyed by it only in common with those along the line of improvement or in close proximity. A street is made where none was before, or is greatly improved, or a road is made through lands before without one, and property along the street or road is greatly enhanced in value, so that it is worth at least as much, yea, more than before. But all persons along the street or road are alike benefitted. Shall we take such enhancement of value into consideration? The better opinion is that we must. Indeed, how can we help it, by what process, when we hold that, if the value afterwards is as much as before, no recovery for damages can be had? Many authorities tell us that we must consider as general benefits,—and not charge against the owner,—not only benefits throughout the city or town, but also benefits common to all persons along the line of the improvement. Likely we must so construe *Kanawha Co.* v. *Turner*, 9 Leigh, 313, and *Railroad Co.* v. *Foreman*, 24 W. Va. 662. But in *Muire* v. *Falconer*, 10 Grat. 17, the opinion says the jury must "show a just regard to the advantages resulting from the passing of the road through the land," and that the advantages to be excluded are those "derived to the owner in common with the country at large," thus not excluding from consideration those advantages directly conferred on property along the line of the improvement; leading us to infer they ought to be deducted from the damages. So in *Mitchell* v. *Thornton*, 21 Grat. 179. So in *Kanawha Co.* v. *Turner*, 9 Leigh, 313, the words "country at large" are used, but the case seems to exclude benefits immediately from the work, shared by all along it. In Illinois the constitution on this subject is like. ours. Ours was borrowed from it. In the recent well-considered case of *Railway Co.* v. *Stickney*, 150 Ill. 362, (37 N. E. 1099), it was held that "if propesty is enhanced in value by reason

of a public improvement, as distinguished from the general benefits to the whole community at large, it is specially benefitted and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may, to a greater or less degree, be likewise specially benefitted. In other words, it is not such benefits as are special to the particular property, thereby excluding the consideration of such benefits as are common to other property similarly situated, but it is such benefits as that the particular property is by the improvement enhanced in value—that is, specially benefitted —that are to be considered." And also that, "if a piece of property is enhanced in value, its enhancement—or, in other words, benefits to the property—can not be said to be common to any other property especially enhanced in value, and it is thus specially benefitted within itself, and irrespective of the benefit that may be conferred by the improvement upon other properties." It is further there held that, where "general benefits," or "benefits in common," and such expressions, are used in the books, it is meant "those general, intangible benefits supposed to flow to the general public from a public improvement. Thus, the paving of a street in a city may confer special benefits on properties near it by an increase in their value, and at the same time, by the convenience afforded the general public, confer general benefit; and so a railroad through a town or the country may be a general benefit, by giving additional facilities for travel and commerce, and thereby be a benefit to the community at large. But the effect of such general benefits upon any particular piece of property would be impossible of ascertainment, and speculative; and it has always been held that such benefits are not to be considered for that reason." And, also, it was held that "the damage contemplated by the constitution is an actual diminution of the present value or price caused by the construction of the road, or a physical injury to the property that renders it of less value in the market if offered for sale. The test of whether damages have accrued to the land not taken is whether there has been a diminution in its market value by reason of the proposed improvement. The effect upon the whole tract remaining after part is taken must be considered." And also that

"the consideration of benefits by which the land not taken is increased, instead of being diminished, in value, is not the deduction of benefits or advantages from the damages, but it is ascertaining whether there is damage or not. It is but the estimation of damages, and seems to be the only just mode of estimating them. If the property is worth as much after the improvement as before, then there is no damage done to same. If the benefits received from the making of the improvement are equal to or greater than the loss, then the property is not damaged for public use. There can be no damage to property without pecuniary loss. If there is no depreciation in value, there is no damage." We think these principles sound. They are supported by eminent authority. *Bohm* v. *Railroad Co.*, 129 N. Y. 576, (29 N. E. 802) ; *City of Atlanta* v. *Green*, 67 Ga. 386 ; *Aswell* v. *Scranton*, 175 Pa. St. 173 (52 Am. St. R. 841).

What is said above touching the principles of the case renders unnecessary detailed discussion of instructions. Plaintiff's No. 1 was covered by Nos. 3 and 9 given. I think Nos. 1 and 6 are good. They mention no benefits, it is true, but correctly announce the general proposition that plaintiff, if in fact damaged, is to be made whole. Their ignoring benefits was cured by instructions given for defendant. Plaintiff's Nos. 4, 5 and 7 are bad, under principles stated above, as they ignore benefits to the property from the improvement, simply because like benefits accrue to other property along the street. No. 8 is bad, because it ignores the effect of the establishment of the grade line of 1872. All are bad, because they include lot and buildings, when buildings should be excluded, if built after the establishment of grade line. Defendant's instructions Nos. 1 and 2 are bad ; the others, good. Instructions Nos. 1 and 4 of defendant erroneously tell the jury that the grade line would debar recovery both for lot and improvements. Plaintiff's exception to the rejection of evidence of the cost of foundation of storehouse, erected, not only after the city adopted the system of grade lines, but after work had been begun to conform Morris street to its grade, is not tenable.

There is no error in allowing the question, "Tell the jury what effect, if any, the improvement of Morris street in front of this property of Mrs. Blair's had upon

the value of the property,—whether it is worth more or less after the improvement than it was before." I do not understand that the objection is because it is opinion. As it is a question of value, opinion evidence is admissible. *Railroad Co.* v. *Foreman*, 24 W. Va. 662; *Hargreaves* v. *Kimberly*, 26 W. Va. 787 (point 7); *State* v. *Welch*, 36 W. Va. 690 (15 S. E. 419).

Because of the vice in defendant's instructions 1 and 4, making the 1872 grade line deny all claim for damage to the lot, the judgment is reversed, and a new trial awarded.

DENT, JUDGE: (*concurring*).

My worthy associate has made use of the following language in his opinion, which seems to me tends to confusion, to-wit: "The question is the value of the property less special benefits to the property, but not less general benefits shared in common with other property in the neighborhood. * * * It is not right to charge general benefits, and thus make one man pay for what the whole community enjoys." This is the rule that applies to the ascertainment of the damages in condemnation proceedings to the residue of the property not taken, and contravenes the rule in *Stewart* v. *Railroad Co.*, 38 W. Va. 438 (18 S. E. 604), applicable to the ascertainment of damages where no part of the property is taken. In condemnation proceedings, the enhanced and prospective value of the property is excluded by the provisions of the statute, from the estimate, for the reason that it is a mere matter of conjecture, and is enjoyed by all property owners, generally, along the line of the road, and in the neighborhood alike. It cannot be considered, though the property may be valuable timber, mineral and coal lands, worth a few cents per acre before the taking and one thousand dollars per acre after the taking. *Railroad Co.* v. *Foreman*, 24 W.Va. 662; 2 Dill. Mun. Corp. p. 735, § 625, note 1. Such rule does not apply to cases where no part of the property is taken. The damages are not assessed until the improvement is completed. Then the enhanced value by reason thereof is not a matter of uncertainty, but fixed and determined, and it is nothing more than right and in perfect accord with natural justice that he who asks pay for damages suffered should be willing to give credit for bene-

fits received. If he takes with one hand, he should be willing to give with the other. If, to save a man's life, his leg is broken, he ought not to recover for the broken leg, unless the value thereof exceeds that of his life. And when a persons property is damaged that it may be improved, he should be willing to allow for such improvements in his attempt to recover damages. Hence the rule in *Stewart* v. *Railroad Co.*, above, that "if the fair market value of the abuting property is as much immediately after the construction of the railroads as it was immediately before such improvement was made, no damages are sustained for which a recovery can be had." By this rule all benefits to the property, local or general, by which its market value is kept up or increased, are necessarily taken into consideration; and it is simply impossible to observe or preserve such rule, and exclude from the estimate any value giving benefits. The question is, what is the actual loss to the market value of the property? If there is none, then no damage has been sustained, and no recovery can be had.

*Reversed.*