# WHEELING.

HUTCHINSON *v.* CITY OF PARKERSBURG.

Submitted June 23, 1884.—Decided November 29, 1884.

1. If the owner of a lot near a town builds a dwelling-house on his lot and improves it otherwise, and afterwards the limits of the

town are extended, and the town opens a new street or extends the old one, which does not pass through this lot but passes along one of the boundaries of the lot, and in grading and improving the street the town damages permanently this lot and dwelling without acquiring a right to do so from the owner and on demand paying him a just compensation therefor, the owner of the lot by virtue of section 9 of our bill of rights has a right to recover of the town in an action on the case the damages, which he has thus sustained   (p. 234.)

2. If the owner of such lot outside of the limits of a town builds a residence upon it and otherwise improves it, and the lot fronts on the Northwestern turnpike, and subsequently the limits of the town are extended so as to include this lot, and the State cedes to the town all its interest in the Northwestern turnpike within the enlarged limits of the town, and the town subsequently improves the Northwestern turnpike making a street of it in front of this lot, and in so doing injures it permanently without acquiring a right to do so from its owner and without paying him on demand a just compensation for this injury, the owner of the lot by virtue of the 9th section of our bill of rights has a right to recover of the town in an action on the case the damages he has thus sustained, whether in improving the street in front of the lot the town has done this injury by simply filling up the whole width of the turnpike to the height of the eighteen feet of graded road, which the Northwestern pike under its charter had originally graded and made a road, or whether it increased or decreased the height of the grade of the original road-bed of the Northwestern turnpike. (p. 235–6.)

3. W. H. is the equitable owner of such a lot, and the legal title to only a moiety of it is in him, but the mere legal title to the other moiety is in his wife subject to his life-estate therein, and H. brings alone such action on the case against such town not joining his wife as co-plaintiff in such action, and the town pleads to the declaration not guilty, the plaintiff is entitled to recover the whole amount of the damage, which has been thus done by the town to his lot and dwelling.   (p. 241.)

4. A court ought not to give any instruction asked, when there is no evidence in the case tending to prove the facts, on which the instruction is based.   (p. 238.)

5. If the evidence in the trial of a case before a jury, though it shows that the plaintiff has a good cause of action, fails to prove substantially the plaintiff's case as stated in the declaration, and the jury find a verdict for the plaintiff, the court on the motion of the defendant should set aside this verdict and grant a new trial, and should also permit the plaintiff to amend his declaration so as to correspond with his proof at the trial. (p. 242.)

Statement by GREEN, JUDGE: .

George W. Hutchinson in the year 1849 bought of his father-in-law, Wm. A. Tefft, a two and a half acre lot lying near the town of Parkersburg on the southwest side of the Northwestern turnpike; and during the year 1849 he built upon it a residence, which is still standing.   Wm. A. Tefft died in the year 1850 intestate leaving as his heirs the wife of Gorge W. Hutchinson and a son W. A. Tefft, who on April 28th, 1852, made a conveyance of the undivided moiety of this lot of ground to Geo. W. Hutchinson.   The deed recited in effect that the equitable title to this lot of ground was in George W. Hutchinson by reason of this purchase from Wm. A. Tefft in his lifetime, who had died without making a deed therefor to Hutchinson.   The legal title to the other moiety of this lot of land remained in the wife of George W. Hutchinson, while the equitable title to it in fee was in George W. Hutchinson.   The whole of the purchase-money for this lot having been paid to Wm. A. Tefft in his lifetime by George W. Hutchinson, who has been in the possession of the lot since the time of his purchase residing in the house, which immediately after his purchase he built upon it.   He has since sold a portion of the lot but not this portion, on which he built his dwelling-house.   The lot, on which this dwelling-house was built, and which has never been sold by George W. Hutchinson, fronts 158 feet on the Northwestern turnpike and runs back 140 feet at the west end and 150 at the east end.   The nominal width of the Northwestern turnpike is 60 feet, but the actual width of the road along the front of this lot, which was improved, worked and used as a highway, had never been, and was not then more than eighteen feet; and this eighteen feet of road-bed was on the northerly side of the turnpike, that is, on the side thereof furthest from this lot of the plaintiff.   This remained the condition of this road from the time it was first laid out and built till a long time after this lot of the plaintiff had been included in the town of Parkersburg by an extension of the town-limits, and in fact no change was made in this road or turnpike till 1870.   Up to that time from the time this road was built, years before the plaintiff purchased this lot, this road-bed eighteen feet wide

was elevated above the level of this lot of the plaintiff's along the turnpike at the west end about four feet, and for the residue of the distance the elevation was greater.

In front of the plaintiff's lot this turnpike ran along a hill-side, and the ground sloped gradually from the edge of the road-bed or traveled part of the turnpike to the line of the plaintiff's lot. At the west end of the plaintiff's lot was a large gate, to and from which carts and wagons could be driven from or to the road-bed or traveled part of the turnpike obliquely along the sloping ground. Along the front of the lot close to the line thereof a track had been made by wagons running over it, which was used at the time by the public. This wagon-track was nearly on a level with the plaintiff's lot. The slope between the wagon-track and the regular road-bed had been used by the plaintiff as a means of ingress and egress to and from his lot from 1849 to 1876. A loaded wagon could be driven directly down from the road-bed to the gate leading into the plaintiff's lot by locking the wagon; but if a loaded wagon was driven from this gate to the road-bed it had to be driven up this slope obliquely. After this lot of the plaintiff's had by an extension of the limits of Parkersburg been included in the town for many years, in the summer of 1876 the town of Parkersburg caused this turnpike in front of the plaintiff's lot, then called Pike street, to be improved by widening the road-bed or improved part of the street along the entire front of the plaintiff's lot nearly out to the line between said Pike street and the plaintiff's lot; and to sustain and support the street so widened the Town of Parkersburg caused a stone wall to be built along the entire front of this lot, it being about one foot from the plaintiff's line. The wall was about four and a half feet high on the east end of the plaintiff's line and seven feet high at the west end, and it effectually cut off all access to the plaintiff's lot except by a stairway built about the centre of the lot, which stairway consisted of some eight or nine steps from the street down to the lot. This wall was unsightly and was so built, that it had crumbled in places.

Upon this state of facts the plaintiff George W. Hutchinson, in 1879 brought his action on the case against the City of Parkersburg filing his declaration at August rules, 1879.

This declaration was demurred to; and the demurer being sustained, the court gave leave to the plaintiff to file an amended declaration, which set out that the plaintiff owned said house and lot on the south side of Pike street in the city of Parkersburg and adjoining said street, and that said city was by law authorized to and did fix and establish a certain grade for said Pike street along in front of and adjoining said lot of the plaintiff, and afterwards did unlawfully, wrongfully and without the consent of the plaintiff and without any warrant of law alter and change the grade of said street to a much higher elevation than the grade so established as aforesaid, and caused Pike street to be filled up, and caused the plaintiff's lot to be embanked upon so as to cover up the fencing of this lot; and the said lot of the plaintiff was thus damaged for the public and without the consent or approval of the plaintiff and without any just compensation therefor being made him, and he was thereby deprived of all safe, commodious, convenient and proper egress and ingress from and to the said lot and premises, and of the full, free and rightful use of said lot fronting on Pike street; and said embankment obstructed and still obstructs and injures and damages the plaintiff, whereby he had sustained damages to the amount of $2,000.00.

To this amended declaration the defendant pleaded not guilty, and the plaintiff joined issue thereon. A jury was sworn to try this issue, and on December 16, 1882, they found a verdict for the plaintiff and assessed his damages at $700.00. The defendant moved for a new trial, which the court overruled, and the court on December 15, 1882, entered up a judgment for the plaintiff against the the defendant for $700.00, the damages assessed by the jury, and his costs. The defendant took the three following bills of exceptions:

The first of these set out the facts proven at the trial as above stated, and that there was evidence introduced by the plaintiff tending to prove that the grade of the street after the improvement was made was higher above the plaintiff's lot than the traveled part of the street was before said improvement was made, except at the east end of said lot where the street was cut down. There was evidence introduced by the defendant tending to show that in making said improve-

ments, the street was cut down to a lower grade in front of the plaintiff's lot than it was before, except for a distance of about twenty feet at the west end of the lot, where it was filled in leveling the street. And evidence was introduced tending to show that the street in front of said lot was improved and widened by the defendant, and that the grade of the street now is substantially the same in front of the whole lot as before existed in the improved and traveled part of said street, the grade of the old street having been cut down at some points opposite said lot and filled correspondingly at other points, and that the sloping side of the pike next to the plaintiff's lot had been filled with rock and earth so as to bring it up to the level of the old road bed on the upper side, and thus make the whole or nearly the whole of the sixty feet of uniform grade. And that after the jury had heard all the evidence and argument of counsel the defendant by his counsel requested the court to instruct the jury as follows :

"If the jury believe from the evidence that the plaintiff was not the owner of the entirety of the property in his declaration mentioned at the time of the alleged change in the street in front thereof, but that an undivided half interest therein was owned by his wife, and if the jury also believe from the evidence that the said property was injured or damaged by the said change in said street, then the plaintiff is only entitled to recover in this action an aliquot part of such damages in proportion to the interest in said property owned by him at the time of the alleged damages thereto."

Which said instructions the court refused to give as prayed for, but gave the said instructions with the addition following, viz.:

· "But if the jury believe from the evidence that the plaintiff was in actual possession of the whole of said property, that he purchased it many years ago from William Tefft and paid him the purchase money, and was put in possession of said property by him, and has ever since continued in actual possession thereof, claiming it as his own, then his long continued possession under his claim of title has ripened into title which would enable him to maintain this action, and he is entitled to recover the entire damages, if any, done to said lot by the change made in said street."

And to the judgment of the court refusing to give said instructions as prayed for, and giving the same with the addition aforesaid by the court, the defendant, by its counsel, excepted, and tendered this its bill of exceptions No. 1, and prayed that the same might be signed, sealed and made part of the record in this case, which is accordingly done.

J. M. JACKSON.    [Seal.]

### BILL OF EXCEPTIONS NO. 2.

Be it remembered that upon the trial of this case before the court and jury, and after the evidence mentioned and set out in the first bill of exceptions in this case, which is hereby referred to and made part of this bill of exceptions, and other evidence not certified, had been heard by the court and jury, and after the jury had heard the argument of counsel, the defendant, by its counsel, prayed the court to instruct the jury as follows:

" The jury are instructed that the defendant in this case had the right to improve and use Pike street, mentioned in plaintiff's declaration, formerly called the Northwestern turnpike, to the entire width thereof and close up to the line of the plaintiff's lot, and that if the jury believe from the evidence that in making the repairs and improvements in said street, as mentioned in this case, the grade of the said street, as it had existed before the plaintiff purchased said property, was not materially altered, but that said street was widened out to or near the plaintiff's line at substantially the same grade as before existed in the improved part of said street, then the plaintiff has no cause of action, and the jury must find for the defendant."

And the court refused to give the said instructions as prayed for, but gave it with the addition following, viz. :

. " But if in so doing the defendant changed the street so as to interrupt the plaintiff in the possession and enjoyment of his property, or to obstruct his mode of ingress and egress to and from said property, then he is entitled to recover such damages as you may find from the evidence that he has sustained by reason thereof, and it makes no difference whether the grade of the street was changed or not, the question for the jury is, ' Did what the defendant performed in changing

and improving said street damage the property of the plain-
tiff ? If so, he is entitled to recover.' "

And to the judgment of the court refusing to give the said
instruction as prayed for, and giving the same with said ad-
dition, the defendant, by its counsel, excepted and tendered
this its bill of exceptions No. 2, and prayed that the same
might be signed, sealed and made a part of the record in this
case, which is accordingly done.

                                      J. M. JACKSON.   [Seal.]

### BILL OF EXCEPTIONS NO. 3.

Be it remembered that upon the trial of this case and after
the jury had returned their verdict in the words and figures
following, to-wit : " We, the jury, find for the plaintiff and
assess his damages at $700.00," the defendant, by its counsel,
moved the court to set aside the said verdict and grant it a
new trial upon the ground that the verdict is contrary to the
law and evidence, and also upon the ground that the court
misdirected the jury in the instructions given by the court,
as set out in bills of exceptions No. 1 and No. 2 filed in this
case; but the court overruled said motion to set aside said
verdict and grant a new trial, but entered judgment on said
verdict; and to the judgment of the court refusing to set
aside said verdict and grant a new trial and in entering judg-
ment on said verdict, the defendant, by its counsel, excepted
and tendered this its bill of exceptions No. 3, and prayed
that the same might be signed, sealed and made part of the
record in this case, which is accordingly done.

                                      J. M. JACKSON.   [Seal.]

From the judgment of the circuit court rendered on De-
cember 29, 1882, the defendant obtained a writ of error and
*supersedeas.*

*Cole & Miller*, for plaintiff in error.

*J. A. Hutchinson*, for defendant in error.

GREEN, JUDGE :

The amended declaration in this cause was framed evidently
upon the law as laid down in *Johnson v. City of Parkersburg*,
16 W. Va. 402, in which it was decided that if a municipal

corporation first fixes the grade of a street, and after an owner of a lot adjoining such street has built a house on his lot in reference to the grade thus fixed, changes the grade by raising or depressing it and thus permanently damages the lot and dwelling without acqiring the right to do so, and, if demanded, without paying just compensation for such damages, this is a violation of section nine of the bill of rights, which declares that private property shall not be taken or *damaged* for public use without just compensation ; and that to recover damages for such injury the lot-owner has a right to bring an action on the case. These principles laid down in that case were approved by this Court in the cases of *Spencer* v. *Railroad Company*, *Campbell* v. *Railroad Company*, *Smith* v. *Railroad Company* and *Hale* v. *Railroad Company*, 23 W. Va. 406–456, and may be regarded as settled law in this State.

In the case of *Johnson* v. *City of Parkersburg*, 16 W. Va. 402, Johnson the plaintiff, built a residence on his lot adjoining Pike street in the city of Parkersburg, after the grade of that street had been fixed by the city of Parkersburg, and after the building of his residence the city of Parkersburg changed the grade of the said street, whereby the residence of the plaintiff, Johnson, was damaged. This Court held that he was entitled to recover in an action on the case the damages he had thus suffered. The amended declaration in the case before us, on which the issue was joined and tried by the jury, alleges that the city of Parkersburg after the fixing of the grade of said Pike street subsequently altered it, whereby the tenement and lot of the plaintiff was injured, for which injury damages are demanded. But the case proven differed essentially from the case stated in this amended declaration, as there was no proof, that prior to the building of the residence of the plaintiff the city of Parkersburg had fixed the grade of Pike street, on which the plaintiff's lot abutted.

The court in the case of *Johnson* v. *City of Parkersburg*, 16 W. Va. p. 426 says : " If the improvement of the plaintiff had been made before the street was made or the grade fixed at all, what his rights would be in that case we do not decide, as the question does not arise in this case." And we deem it improper in this case to decide what the plaintiff 's

rights would be if his improvements had been made after the
street was made but before the grade of it was fixed at all ;
for such question does not arise in this case either as alleged
in the amended declaration or as proven.  But while the
case as stated in the amended declaration was, as we have
said, not proven on the trial of the case, yet upon the trial
the case proven was, that improvement had been made by the
plaintiff on his lot, and afterwards the street was made by
the city of Parkersburg not touching a part of the plaintiff's
lot, but passing by it and adjoining it, and in the grading
of this street thus made the plaintiff's improvements and lot
were injured.  For an injury to his lot and improvements
under these circumstances, I think, the plaintiff in an action
on the case was entitled to recover damages, which he had
sustained.

If, for instance, the plaintiff in this case had built a resi-
dence on a lot owned by him not on the Northwestern turn-
turnpike but outside the limits of the city of Parkersburg on
no public road, and after he had thus improved his lot the
limits of the city had been extended so as to include his lot,
and a street had been opened not through his lot but abutting
upon it and running with a line of his lot, and in grading
and improving this street thus opened the earth had been so
raised and piled up as to permanently injure his lot and
improvements, could there be a question but that he would
be entitled to recover in an action on the case against the
city the damages thus sustained by him ?  Clearly he might
so recover such damages.  It would fall directly within the
words of the ninth section of our bill of rights (See Acts
1883, p. 144).  It would be a case of "private property dam-
aged for public use ;" and by *Johnson* v. *City of Parkers-
burg*, 16 W. Va. 204.  Then damages could be recovered in
an action on the case.

Does the fact, that the plaintiff's lot and residence instead
of being outside of the city of Parkersburg on no public
road was outside of the city of Parkerburg on the North-
western turnpike, in any manner alter the case?   It seems
to me it does not.   When the limits of Parkersburg were
extended to include the plaintiff's residence and lot, this Pike
street was for the first time made a street ; and if in im-

proving and grading it, whether the improving was done by making the grade of the whole street correspond with and be on a level with the bed of the Northwestern turnpike, or whether it was made higher or lower than this bed of the turnpike, if by such improvement the residence and lot of the plaintiff was permanently damaged, he would have a right to recover such damages of the city of Parkersburg. For when his land was condemned for this Northwestern turnpike, the damages allowed to him or to the owner of it must have been the damage, which the owner of the lot would sustain, if the Northwrstern turnpike was constructed in the manner prescribed by its charter. Now the charter of the Northwestern turnpike, while it provided the land to be condemned for the public use was to be sixty feet wide, contained the express and additional provision that "the width of said road may be varied, so that it shall not exceed eighteen feet nor be less than twelve feet." (See chapter 104, section 4 of Acts of Virginia of 1830–1831, p. 154, passed March 19, 1831.) When therefore the city of Parkersburg had its limits extended so as to include this lot of the plaintiff's, which was, I presume, done by chapter 94 of the Acts of 1863 of State of West Virginia, p. 110, passed November 5, 1863, this Northwestern turnpike in front of plaintiff's lot was made a street of said town for the first time, and the city of Parkersburg, when this Pike street was thus extended, found that the plaintiff had built a residence on his lot some fourteen years before that time; that, when he built this residence and improved this lot, he had a right to assume, that the Northwestern turnpike would permanently remain as it then was, and that within the nominal limits of this turnpike, sixty feet wide, only eighteen feet would be graveled for a road, as the charter of the turnpike company prohibited the road to be of greater width than eighteen feet.

While by the 6th section of chapter 94 of the Acts of 1863, p. 111, the interest of the State in this turnpike, so far as it was within the city, was ceded and relinquished to the city of Parkersburg, it would seem clear that their right to improve and grade this turnpike to its full width of sixty feet could not be derived from this cession but simply from

its being made a street of the city of Parkersburg. But, as we have seen, while in thus making a street of it the city derived a right to improve it as the city pleased, yet the city was bound to pay to the owner of any lot adjoining this street thus made any damage to the residence and lot of such owner by the improving or grading in any manner of this street in front of a lot built upon before this street was opened as a street, that is in this case, before the extension of the limits of the city over any lot lying on this Northwestern turnpike.

I have assumed that this extension of the city over this lot was made by the act passed November 5, 1863, (see Acts of 1863, p. 110.) This is not expressly asserted in the record in this case. But an examination of the record in connecion with the acts of the assembly with reference to the city of Parkersburg seems to make it clear, that I am justified in assuming that the limits of the city of Parkersburg were extended over the plaintiff's lot on November 5, 1863. That this lot was not in the city of Parkersburg in 1849, when the plaintiff purchased this lot and built his house upon it, was expressly proven; that it was not in the extension of the limits of the city of Parkersburg by the act of March 17, 1851 of State of Virginia (see Acts of 1850–1851, p. 181), which was known as "Stephenson's addition", is clear from the deed for this lot made after that on April 28, 1852. In this deed the lot is described as lying "near the town of Parkersburg." It was not included in the city of Parkersburg prior to March 17, 1860 ; for chapter 200 of Acts of 1859–1860 "an act to reduce into one the several acts incorporating the town of Parkersburg" shows, that up to that time there had been no addition to the original limits of Parkersburg since its incorporation January 2, 1820, except "Stephenson addition" made by the act of March 17, 1851. The first addition thereafter made was made November 5, 1863 by chapter 94 of Acts of 1863 (see p. 110); and this on its face shows, that it included in this new extension a portion of the turnpike not previously in the city, and it ceded and relinquished the State's interest therein to the city. So far as the acts show, this is the last extension of the limits of the city. Of course however it is unimpor-

tant what was the exact time that the city-limits were extended over the plaintiff's lot, the only important fact is, that this extension took place subsequent to the building of his residence on this lot; and this does distinctly appear from the record.

Did the court below then err in refusing to give the instruction asked for as set out in the plaintiff's second bill of exceptions in the form in which the plaintiff asked it, and in giving it as modified by the court? The instruction asked for by the plaintiff assumes, that there was some evidence, from which the jury might possibly believe " that in making the repairs and improvements in said street, as mentioned in the case, the grade of said street, as it had existed before the plaintiff purchased said property, was not materially altered, but said street was widened out to or near the plaintiff's line at substantially the same grade as before existed in the improved part of said street." Now the evidence shows beyond question or controversy, " that no grade of said street existed in front of the plaintiff's lot, before he purchased this property." He made his purchase in 1849; and it is not pretended, that before that time any street existed in front of his lot. The street in front of his lot was not made for a long time afterwards, probably some fourteen years. The North-western turnpike did exist and was graded before the plaintiff purchased this lot; but it was not then nor was it for years afterwards a street of the city of Parkersburg, for it was then entirely out of the limits of that city. The instruction for this reason instead of being given with a modification should have been entirely rejected by the court.

If the case declared upon in the amended declaration had been the case, which was proven before the jury, the court might have given the following instruction, which is substantially like the modification of the plaintiff's instruction given by the Court, that is:

" If the jury believe from the evidence, that the plaintiff purchased the lot in the declaration mentioned and built his residence thereon, and that the lot abutted on the North-western turnpike, and, when so purchased and built upon, it was out of the limits of Parkersburg, but that the limits of Parkersburg were subsequently extended so as to include

this lot, and that the defendant in improving Pike street, formerly the Northwestern turnpike, to the entire width thereof and close up to the line of the plaintiff's lot inflicted damage on the plaintiff, then it is immaterial whether the grade of the Northwestern turnpike on that portion of it, which was graded at the time of the plaintiff's purchase of this lot, was materially altered or not, or whether it was widened out to or near the plaintiff's line at substantially the same grade, as existed on the graded portion of the Northwestern turnpike, as it had before existed, or whether this grade in this widening was changed, provided the change made in improving this street by the defendant was such as to interrupt the plaintiff in the possession and enjoyment of his property. For if this was the case, or the plaintiff was obstructed in his mode of ingress and egress to and from his property, he is entitled to recover such damages, as you may find from the evidence he has sustained by reason thereof, and it makes no difference whether the old grade of the Northwestern turnpike was changed or not, the question for the jury is, ' Did what the defendant performed in improving this street damage the property of the plaintiff?' If so, he is entitled to recover."

But under the issue made up in this case of not guilty on the amended declaration no such instruction could properly be given; as in the amended declaration there were no allegations of fact corresponding to those which would have made such an instruction relevant, though in the proof before the jury there were such facts. The court ought to have awarded a new trial, because the case proven, while it was a good one, was materially different from the case stated in the amended declaration. The cause of action stated in the amended declaration was not sustained by any proof in this important particular, that the defendant first fixed the grade of Pike street in front of plaintiff's lot and afterwards changed it to the damage of the plaintiff.

It only remains to consider the instructions referred to in the first bill of exceptions. It may be regarded as settled law, that where there are several joint owners of personal property, any one of them may sue for a tort or injury to such personal property, and he can only be defeated in such action

by a plea in abatement (*Addison* v. *Coerend*, 6 Term R. 766). If in such action the defendant pleads not guilty instead of pleading in abatement, the plaintiff may recover but only for the injury to his undivided part and not the whole amount of damages done to the personal property owned by the plaintiff and others jointly. (*Stancliff* v. *Hardwick*, 2 C. M. & R. 9). Of course these rules can have no application to a husband and wife, as they cannot have a joint ownership of personal property. For at common law marriage was an absolute gift to the husband of all the wife's personal property in possession. (*Taylor* v. *Yarbrough and wife*, 13 Grat. 190). As a necessary consequence, if the wife's personal property at the time of her marriage is unlawfully taken, the husband alone can bring an action for its recovery. (*Seibert* v. *McHenry*, 6 Watts 301). So it must follow, that if land be devised to a husband and wife for a term of years, and the husband sub-let it for a shorter term, an action on the case can be brought for an injury to the reversionary interest, and the non-joinder of the wife will be no valid objection. (*Waller* v. *Harrison*, 5 M. & W. 142). And even if the fee simple land of the wife be held by the husband in right of his wife, and permanent damages be done to the land, as by the cutting down of timber on it, suit may be brought by the husband and wife for the damages inflicted, or, if he choose, the husband may bring such suit alone. (*Clapp* v. *Stoughton*, 10 Pick. 463–469; *Allen* v. *Kingsbury*, 16 Pick. 235, 240; *Cushing* v. *Adams*, 18 Pick. 110). But even in cases, where two should join, and only one brings a suit for a tort, such misjoinder can only be pleaded in abatement. (*Motley and others* v. *French*, 2 Cash. 131; *White* v. *Webb*, 15 Conn. 302; *Shaw* v. *Dutcher*, 14 Wend. 224). And this general rule applies to suits for torts to real as well as personal property. (*Bradick* v. *Schenck*, 8 Johns. 151).

It is true this rule, that the non-joinder of a co-plaintiff in any action for a tort can be taken advantage of only by plea in abatement, would not apply, where the the husband brings an action of tort for injury to any property real or personal, when he had no legal interest in his own right in the property affected. But this exception could have no application, where the husband owned a moiety of the land the subject

of the tort in his own right independently of his wife, and the other moiety in right of his wife; as is the case in the matter under consideration. Had the husband had no interest in the land the subject of the tort except the interest, which he held in the land of the wife as husband, she being the fee-simple owner, and it was proper for the husband and wife to unite in the action, then in such a case the failure to join the wife as co-plaintiff could be taken advantage of under the plea of not guilty; but where the husband owned a moiety of the land in his own right and had a life-estate in the other moiety of the land in right of his wife, and it was for any reason in the particular action brought necessary or proper to join the husband and wife as co-plaintiffs, then advantage could not be taken of this non-joinder under the plea of not guilty but only under a plea in abatement.

My conclusions from these authorities are, that George W. Hutchinson, the husband, could properly bring such an action as this above without joining his wife as co-plaintiff and could recover all the damages done to the lot, just as he could have brought an action alone for cutting down timber, trees or doing other permanent injury to his lot, and in such action recover the whole of the damages done; and even if it could be necessary in such an action as this to join his wife, as he was the legal owner in his own right of a moiety of this lot, no advantage could be taken of the non-joinder of his wife as a co-plaintiff except by a plea in abatement. The fact, that George W. Hutchinson was the equitable owner in fee of this lot of land and held the legal title to the whole of this lot for his life, would seem to make it still more clear, that he had a right to bring this suit in his own name and to recover the whole amount of the damages done to this lot by the defendant. The court ought for these reasons to have rejected entirely the instruction asked for by the defendants mentioned in the first bill of exceptions, and not have given it after modification.

The modification too was improper, because it bases the right of the plaintiff to recover the entire damages on the contingency, that the plaintiff had actual possession of the whole of the lot that he had purchased and paid for and that he had claimed it as his own for so long a time, that it had

ripened into a good title. The real law of the case is that he was entitled to bring this suit and recover the entire damages done to this lot by the defendant absolutely and subject to no such contingency. But because of the failure of the plaintiff in his declaration to state his case, as it was proven by the evidence, the circuit court on the defendant's motion should have granted a new trial and ought not to have entered up the judgment for the plaintiff against the defendant on the verdict of the jury.

For this reason this judgment of the circuit court must be reversed and annulled and the plaintiff in error must recover of the defendant in error his costs in this Court expended; the verdict of the jury must be set aside, and a new trial awarded, the costs of the former trial to abide the result of the suit; and this case must be remanded to the circuit court of Wood county with instructions to permit the plaintiff to amend his declaration in such reasonable time as the circuit court may fix, if the plaintiff desires so to do; and said circuit court will then proceed with the case according to the principles laid down in this opinion and further according to the rules governing courts of law.

REVERSED.   REMANDED.