# CHARLESTON.

## KUNST *v*. CITY OF GRAFTON.

### Decided February 8, 1910.

1. MUNICIPAL CORPORATIONS—*Constructing Streets—Casting Collected Surface Water on Abutting Property.*

   Where in constructing a new street a municipal corporation collects the surface water in holes left in the street opposite an abutting lot, and because of the soft and porous condition of the soil the water so collected is caused to flow in and under the same, causing the soil thereof to slip and destroy the buildings thereon, such municipal corporation is liable in damages to the owner of such lot for the consequential injuries sustained, as for collecting such surface waters in drains or gutters and casting them in a body thereon.

2. SAME—*Constructing Streets—Injuries to Abutting Property.*

   If in so constructing and grading one of its streets on a hillside, a municipal corporation build an embankment in front of an abutting lot and thereby increases the lateral pressure thereon, which, combined with the increased flow of the surface water, caused by such street improvement, or by the water collected in holes or in drains or gutters and cast in a body on such lot, causes such lot to slip and to destroy the buildings thereon, such corporation is liable in damages to such lot owner for the consequential injuries to his property.

3. APPEAL AND ERROR—*Review—Erroneous Instructions.*

   An instruction to the jury, covering a case not presented by the pleadings, though there be evidence on the subject covered thereby, is erroneous, and unless it clearly appears that the rights of the party complaining have not been injuriously affected thereby, the giving of such an instruction will constitute reversible error.

4. EVIDENCE—*Opinion Evidence—Inferences from Facts.*

   Though opinion evidence as a general rule is not admissible, still when the facts are such, that it is manifestly impossible to present them to the jury with the same force and clearness as they appeared to the observer, then opinion is admissible as to the conclusions and inferences to be drawn therefrom.

(ROBINSON, PRESIDENT, Absent).

Error to Circuit Court, Taylor County.

Action by Charles F. W. Kunst against the City of Grafton. Judgment for plaintiff, and defendant brings error.

*Reversed, and New Trial Awarded.*

*Chas. P. Guard* and *G. W. Ford,* for plaintiff in error.

*A. W. Burdett* and *Warder & Robinson,* for defendant in error.

MILLER, JUDGE:

A clear statement of the cause of action is rendered necessary to a proper understanding of our decision on the points of error presented. Plaintiff alleges that being the owner of a lot on Front Street in the City of Grafton, running back and up a gentle slope to a steeper hillside and connected with the surface of his lot by a natural and unbroken surface and by natural and unbroken strata, and upon which lot there was situated a two story frame dwelling house, of great value, and which, prior to the grievances complained of, was occupied by a tenant, and yielding plaintiff substantial and remunerative rents, the defendant undertook to and did grade and construct a certain new street across said hillside immediately back of said lot, and dug into said hillside to a great depth, the entire width of said lot and in close proximity to the back line thereof, in both directions, and rising quite precipitously to the west for a long distance, and so as to collect in said roadway and its gutters the surface waters from a great territory not theretofore draining to plaintiff's lot; and did thereby unlawfully and wrongfully, and without the consent of plaintiff, throw said surface water, so collected, in a mass or body wholly upon his lot; and did also dump, unload, place and pile cartloads of timber, earth, stone and gravel thereon and extended the embankment or grade of said new street, of great weight, into plaintiff's lot, so as to not only break the surface or strata that theretofore held and substained plaintiff's lot on said hillside, but so as to cast the great weight of the whole of said embankment upon the rear of said lot, at the place where said new road or street collected said surface water in a mass or body, as aforesaid, and whereby the water so collected and cast in a mass or body thereon, as aforesaid, percolated, soaked and flowed, not only on the surface but under the earth and strata of said

lot, from the rear line thereof to said Front Street, and into and under said dwelling house and cellar, and that by reason thereof and of the great weight of said embankment upon and in the rear of said lot, the upper or elevated portion thereof, from rear to near the front, was made to loosen, slip, slide and change its natural lay and location and to carry with it said dwelling house, and to cause said house to fall, and to become wholly untenantable and absolutely worthless, and to be continuously wet, damp, slipping and sliding, and wholly unfit for occupancy, as aforesaid, or for any other purpose, and whereby the plaintiff has been wholly deprived of the use of said lot and dwelling house, and hindered and prevented from enjoying the same to any extent, and that the rental and market value thereof has been greatly diminished, destroyed and ruined, and the plaintiff otherwise greatly damaged.

The theory upon which the case was made up and tried below, was that the damages sustained were in consequence, either, (1) of the alleged wrongful and unlawful collection of the surface waters and casting them in a mass or body upon plaintiff's lot; or (2) of the increased lateral pressure on the soil thereof by the building of the embankment thereon, or in the street opposite thereto, as alleged; or (3) in consequence of the combined force and action of the first two causes of injury.

Upon the trial below there was a verdict and judgment for plaintiff for $362.50, to which judgment, upon the petition of defendant, a writ of error was awarded by this Court.

The action of the court below in overruling the demurrer to the declaration, assigned as error in the petition, is not argued or apparently relied on here. We are of opinion that the declaration states a good cause of action.

The action of the court below in overruling defendant's motion to continue the case is apparently relied on as error. The grounds of the motion were, absence of two witnesses. One of these appeared and was examined. As to the other, the plaintiff proposed that his testimony given on a former trial and taken down by the stenographer might be read in evidence on the second trial. Wherefore we find no abuse of the discretion of the court in refusing to continue the case.

The other errors assigned relate to the giving and refusing of instructions, the alleged admission of improper evidence, and

the refusal of the court to set aside the verdict and award the defendant a new trial.

Plaintiff's first instruction, given, was excepted to. It told the jury in substance that if they believed from the evidence that defendant in making, grading and constructing the new street or road in the rear of plaintiff's lot collected the surface water and caused it to percolate, soak and flow in a mass or body thereon, and so as to cause said lot to become marshy and slippery; and did dump, unload, place and pile timber, earth, stone and gravel thereon, and constructed an embankment thereon, so as to cause said lot to slip, slide and change its natural lay and location, all without the consent of plaintiff, and thereby destroying, damaging and ruining the rental and market value of said lot and the house thereon, they must find a verdict for plaintiff and fix his damages at the amount which the same had been deteriorated or lessened in value by the action of defendant. This instruction assumes that the embankment was built upon the plaintiff's lot. The evidence is conflicting as to whether the embankment encroached upon plaintiff's lot; but it is conclusive that either by the action of the water, or the weight of the structure, or both combined, a great portion of this embankment, at or about the time of the injuries complained of, was caused to slip down and encroach upon plaintiff's lot. The theory of the instruction is that the damages were in consequence of the combined action of the water and the increased lateral pressure of the embankment. In this respect this instruction differs from defendant's instruction number 4, refused, and we think properly refused, for while it would have rightly told the jury that plaintiff could not recover for the injuries sustained by the change in the natural flow of the surface waters, by the grading and construction of the street, unless cast in a body upon plaintiff's lot, it would have also told them that he could not recover for injuries thereto by the making or extension of said embankment upon or opposite to said lot, or by any or all of such causes combined. It is proper, therefore, to consider these insctructions together, involving as, they do the question whether plaintiff can recover for damages to his lot from the increased lateral pressure of said embankment.

The only objection urged to plaintiff's first instruction is,

that there is no evidence showing that the surface waters were collected and caused to flow in a mass or body upon his lot. The evidence relied upon is mainly that of the witness Jackson, who testified that in digging and excavating big holes were left in the road, and the water coming down off the hill settled in these holes and flowed down through the openings in the stone, and that in this way they were collected in a body and cast upon or under the surface of plaintiff's lot. The testimony of other witnesses also tends to support this witness as to this fact. It is earnestly insisted, however, that this evidence does not bring the case within the rule of *Jordon* v. *Benwood,* 42 W. Va. 312, and *Clay* v. *St. Albans,* 43 W. Va. 539. The evidence does not show that the water thus collected in holes was otherwise collected and cast in a body upon plaintiff's lot, but it leaves little or no room to doubt that these surface waters thus collected in the holes did seep and flow down through, under and over plaintiff's lot, so as to cause or contribute to the slipping and sliding thereof and to the destruction of his dwelling house thereon. Witnesses say that the soil on plaintiff's lot was of a soap stone character, was open and porous so as to allow the water to soak, percolate and flow freely in and under the same. Did not the collection of these surface waters in these holes in this way, and under the facts and circumstances shown in evidence, amount to a collection and casting of the same in a mass or body upon the plaintiff's lot? They were not allowed to flow freely over the surface as but for these holes they naturally would have done. True they did not flow in open drains or gutters through plaintiff's lot, but by these unnatural means were made to flow in and under the same so as to do damage to the plaintiff. We think upon these facts the instruction justified by the authorities cited.

The next question is, is the defendant, as assumed in plaintiff's instruction number one, and negatived in defendant's instruction number 4, rejected, liable for damages due to the increased lateral pressure of the embankment? Assuming that the embankment was originally built upon the street, and did not then encroach upon plaintiff's lot, would not defendant nevertheless be liable for damages incurred by plaintiff as the result of the increased lateral pressure upon his hillside lot? We think it would.

Undoubtedly a municipal corporation has the right to improve its streets, and to raise and lower the grades thereof; but if in doing so it do damage to an abutting lot owner it is liable. Under our law private property cannot be taken or damaged for public use without just compensation. The right to lateral support applies only to land in its natural state. *Stevenson* v. *Wallace,* 27 Grat. 77; *Tunstall* v. *Christian,* 80 Va. 1. These and other authorities hold that an adjoining owner is not entitled to lateral support for buildings or other artificial structures. But does this rule apply to the public in general, or to a municipal corporation authorized to build, improve and grade the public roads and streets? 18 Am. & Eng. Ency. Law, 544, on the authority of some New York cases, says: "The right to support exists not only for the highway in its natural state, but also for the highway when so improved as to increase the lateral pressure, the doctrine controlling the rights of adjoining landowners in this respect having no application to the case of a highway." In *Milburn* v. *Fowler,* 27 Hun. 568, one of the cases referred to, Cullen, Judge, says: "It is claimed that there is no right of lateral support for the street unless it is alleged and shown that the highway is in its natural state and free from superincumbent earth which may increase the lateral pressure." But, says he: "This doctrine, which, in the absence of any statutory regulations, controls the relative rights between adjacent owners, has no application to the case of a highway." In *Finegan* v. *Eckerson,* 32 N. Y. App. Div. 233, one point of the syllabus is: "So far as the lateral support of the soil, in its natural state, without the burden of any buildings upon it, is concerned, the occupant of land is entitled to protection by injunction, but this rule does not apply, in the absence of statutory regulation, to the case of buildings upon land contiguous to that upon which an excavation is being made." Other New York cases referred to in this decision are pertinent. It will be noted, however, that both of these cases say, "in the absence of any statutory regulation." In New York damages are not given for injury to private property for public purposes, unless the property or some portion of it be actually taken. But even in that jurisdiction consequential injuries resulting in damage, owing to the hardship of the rule in that state, have frequently been con-

strued to be a taking of the property within the meaning of the New York law. Under our constitution we have no such difficulties to overcome. Section 9 of the Bill of Rights is that: "Private property shall not be taken or *damaged* for public use, without just compensation." While in *Jordon* v. *Benwood, supra,* at pages 319, 320, Judge BRANNON expressed the opinion that this clause of our constitution would not render a municipality liable for consequential damages in diverting the course of surface waters so long as they continued to flow as surface waters and not in gutters or drains, and by being cast in a mass or body upon adjoining lands, no more than an individual would be liable therefor, yet that this provision of the constitution was intended to make the public equally liable with an individual for doing injury to the adjoining land of a citizen, as for instance, "by embankment rendering access to it dangerous or inconvenient." We think this doctrine supported by Elliott on Roads & Streets, sections 494 to 499, inclusive. In section 495, this writer says: "It is not difficult to conceive cases where ordinary care would require the construction of a wall, or other protection, to prevent injury to adjoining property, and in such cases it should be built, or the city be compelled to make compensation for the loss actually sustained from the failure to suitably protect the adjoining property from injury."

Our conclusion, therefore, is that plaintiff's instruction number one is good, and was properly given, and that defendant's number four, rejected, was properly rejected. The latter implied that defendant would not be liable for damages due to the making or extension of the embankment.

Plaintiff's instruction number two, given, and complained of, told the jury that if they believed from the evidence that defendant did not use due diligence in pushing to completion the work of grading the new street in the rear of plaintiff's lot, but was negligent therein, so that the delay in completing the work caused the injury complained of they must find for the plaintiff. We think this instruction erroneous. The error is practically conceded, but it is insisted it was harmless. It was erroneous, if for no other reason, because the declaration contains no allegation of delay in the completion of the work or of injury to the plaintiff's lot in consequence thereof. There is

evidence showing and tending to show that the work 'was suspended for a time, during the winter months, on account of bad weather, and was not resumed until in the early spring. In the meantime, however, the damage was done to plaintiff's lot.   Conceding that the evidence may have been sufficient to support the theory of the instruction, not advanced by the declaration, could it be made the basis of recovery?   The rule is that an instruction should not be given upon a question not raised by the pleadings.   *Burr* v. *Brown,* 5 W. Va. 241; *Henry* v. *Davis,* 7 W. Va. 715; *Barber* v. *Fire Ins. Co.,* 16 W. Va. 658. It is argued, however, upon the authority of *Hunter* v. *Jones,* 6 Rand. 541; *Beaty* v. *R. R. Co.,* 6 W. Va. 388; *Clay* v. *Robinson,* 7 W. Va. 349; *Sheppard* v. *Ins. Co.,* 21 W. Va. 368, 394; *State* v. *Poindexter,* 23 W. Va. 805; *McDonald* v. *Cole,* 46 W. Va. 186; *Kerr* v. *Lunsford,* 31 W. Va. 660 and *Carrico* v. *W. Va. Cent. & P. Ry. Co.,* 39 W. Va. 86, and other cases, that though an erroneous instruction be given if it contains a mere abstract proposition or it be manifest that the complaining party has not been prejudiced thereby it will not be ground for reversal.   In this case, however, we cannot see that the defendant was not prejudiced by this instruction.   Evidence was offered by plaintiff showing delay in the completion of the work, but the jury were told by this instruction, that if they found due diligence was not used and there was negligence in completing the work, and that the delay caused injury to the plaintiff, not that they might, but that they *must* find a verdict for the plaintiff.   None of the authorities relied upon will relieve an instruction from the quality of reversible error when it covers a case not made by the pleadings.   For instance, in *Beaty* v. *R. R. Co., supra,* relied upon, it is said, referring to the instruction under consideration:  "It is not perceived, therefore, that the plaintiff could have been injured by the instructions, as upon the evidence presented in his bill of exceptions, *and the pleadings* in the cause, the plaintiff still had a right to recover for that kind of damage brought to the notice of the jury, and for which this action could be maintained."

Defendant complains of the rejection of its instructions numbered 5 and 6.   No. 5 would have said to the jury that even though defendant merely caused a change in the flow of the surface water incident to the proper work of improving and

opening said street, defendant would not be liable for injury to plaintiff's lot caused thereby, if the water still spread out as surface water usually does. No. 6 would nave propounded the proposition that if the work of making and constructing said street and embankment was not negligently done, and whereby the course of the surface water was changed, yet if said water still spread out over the surface of plaintiff's lot, or soaked into or percolated through the soil and was not by such change made to run in destructive currents plowing drains or courses through the soil, washing away the property of plaintiff, the defendant would not be liable for damages on account of the water being so changed. These instructions are both predicated upon the principles announced in *Clay* v. *St. Albans,* and *Jordon* v. *Benwood, supra.* But the case we have here, in at least one essential feature, is not like those cases. In this case we have the fact proven that the surface water was collected in holes in the street opposite plaintiff's lot as already shown, a fact ignored in both these instructions, and besides we have the added cause of the injury, the increased lateral pressure of the embankment in the street opposite plaintiff's lot, co-operating with the first. While the general propositions stated in the instructions may be true, they are not applicable to the case in hand: First, for ignoring the fact that the water was collected in holes, and from there turned into plaintiff's lot practically in a body; second, for ignoring the element of damages due to the embankment; and third, because if the increased flow of the surface water thereon caused by the improvement of the street, rendered plaintiff's lot less able to withstand the increased lateral pressure of said embankment, and thereby contributed to the injuries to his property, as the evidence tends to show, it was not strictly proper to tell the jury, as these instructions would have done, that defendant was not liable for injury due to the surface water thus turned upon plaintiff's lot. They were both properly rejected for these reasons.

Defendant's instruction number 3, as proposed was refused. But the court modified it by adding the words in italics, and as modified gave it to the jury, as follows: "The court instructs the jury that he City of Grafton had the right to make, grade, and open said street upon its own land, and if said city did so

make, grade and open said Barrett Street and thereby cause the surface water to increase in quantity upon plaintiff's said lot, still the said city is not liable for damage done by said water, unless said water was cast upon said lot in a mass or body, *or in such manner as to cause the injury complained of."* The refusal of the court to give the instruction as proposed, and in modifying it and giving it as modified is excepted to. As originally proposed we think this instruction bad, for the reasons given respecting said instructions numbered 5 and 6, and should have been rejected. But did the modification cure it? It is likely the court intended that the amendment should apply to the fact that water was collected in holes opposite plaintiff's lot, and that the increased flow of the surface water thereon had rendered it less able to withstand the increased lateral pressure of the embankment. If so, and the jury so understood it, the instruction might not be objectionable. But we think it doubtful whether they so interpreted the instruction, and that the instruction should have been so drawn as to have left no room for misunderstanding.

Bills of exceptions numbered 9, 10, 11, 12, 13 and 14, relate to certain so called opinion evidence of witnesses, as to what caused the slip on plaintiff's lot, and whether when slips do occur they usually occur above or below where the excavation takes place. All these witnesses, after detailing as well as they could, the facts, and the appearances of the property viewed at or about the time of the injuries, were permitted to give their impressions or opinions as to the real cause of the slipping. It is claimed this was error, calling for reversal, and the rule announced in points 5 and 6 of the syllabus in *Overby* v. *C. & O. Ry. Co.,* 37 W. Va. 525, is relied on, namely: "5. If the facts in a case can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then the opinion of experts can not be received in evidence as to such facts." "6. The opinion of a witness, who neither knows nor can know more about the subject-matter than the jury, and who must draw his deductions from facts already in the possession of the jury, is not admissible." But these rules, though applicable to that case, have little if any application here. It will be noticed that these rules are limited to

cases where all the facts can be placed before the jury, and the jurors are either just as competent to form opinions and draw inferences in reference to them as the witnesses, or the deduction must be drawn from facts already in the possession of the jury. While it is true the witnesses undertook to detail the facts and conditions and to describe the appearances of the property, attending, and before and after the injuries, and the jury viewed the premises at the time of the trial, a year or more afterwards, yet we know that human language is inadequate to accurately describe all that appeared at the time, and that must then have appeared to the eyes of the witnesses who saw and viewed the premises. Where the facts can thus be only imperfectly narrated, the jury may properly be given the benefit of the opinions or impressions of the witnesses, as material facts in arriving at their verdict. See cases collated in 5 Ency. Dig. Va. & W. Va. Rep. 792, 793. Our conclusion is that no error was committed in the admission of this opinion evidence.

As it became necessary to reverse the judgment for substantial errors already pointed out, it will not be proper to otherwise dispose of the motion for a new trial based on the theory of want of evidence to support it.

The judgment is reversed and the defendant awarded a new trial.

*Reversed, and New Trial Awarded.*