J. C. PEDDICORD, *et al.* *v.* COUNTY COURT OF MARSHALL COUNTY

(No. 8859)

Submitted May 18, 1939. Decided May 23, 1939.

*J. W. Rickey* and *John K. Chase,* for plaintiff in error.
*A. L. Hooton* and *Evans & Evans,* for defendants in error.

Fox, President:

This case comes to us on a writ of error, prosecuted by the defendant, to a judgment against it for the sum of $4079.20, rendered by the circuit court of Marshall County on the verdict of a jury in the law action of J. C. Peddicord and Helen May Peddicord against the county court of said county.

The action of the plaintiffs is based on a claim for damagés to real estate alleged to have been sustained through the widening and lowering of the grade of the highway in front of their residence property, located on the lower slope of a hill, on Highland Avenue and Waynesburg road, near but outside the corporate limits of the City of Moundsville. The alleged damages were sustained prior to the enactment of Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, and at a time when the county court had the responsibility connected with the taking or damaging of property for road purposes. The various questions presented arise on the declaration, the defendant's plea of not guilty, and those developed in the trial of the case.

The plaintiffs' property, consisting of four contiguous lots, fronting on the highway about 320 feet, was conveyed to Charles L. Sullivan in 1903, and in the following year he built a one-story residence thereof, with tile foundation without footers, and a basement under the southern portion of the house. At the time of the erection of this house, Sullivan worked a horse and scoop shovel for about three weeks removing dirt from the rear of the house to the front and side, but the record shows that the house rested on the natural terrain as distinguished from the graded portion. On December 20, 1910, Sullivan conveyed the property to George P. Wasmuth, who at some time added a bathroom and back

porch to the house. The plaintiffs acquired the property and moved into the house about November 1, 1920, and in 1922 began to make substantial improvements which were completed in 1927, about the time the county court began the alterations in the highway of which complaint is now made. The house was rebuilt in 1927 and the greater part of the other improvements made in 1922. At the time the plaintiffs purchased the property, the house thereon was a one-story structure consisting of five rooms and a basement. Plaintiffs built a two-car tile garage, added a second story to the house consisting of three bedrooms, a hall and a bath, remodeled the downstairs and put in hardwood floors on top of existing floors, increased the size of the basement and lowered the whole thereof eighteen inches and at one point lowered the excavation two feet in order to support a chimney, removed the dirt under two rooms and built a concrete foundation under these rooms, put a concrete floor in the basement, put in two pilasters and two brick pillars in the center of the house, and installed in the basement a large heating furnace with pipes. Outside the house they constructed a concrete wall twelve inches thick, six feet high and extending along the rear of the house for thirty-five feet, and for a part of this distance re-enforced by steel rails, and also concrete walks and steps leading from the house to Highland Avenue in front. This was the state of plaintiffs' property when the county court began work on Highland Avenue and the Waynesburg road in 1927.

The highway in front of plaintiffs' property had what is termed a "paper width" of sixty feet, but the graded and used potrion thereof did not exceed twelve feet. This property being located at the intersection of Highland Avenue and Waynesburg road, the county court widened these roads and graded the same to within one foot of the line of plaintiffs' lots, creating a 45° slope about eight feet high from plaintiffs' line to the level of the road grade. The evidence tends to show that for the most part the grade of the road was not changed from that existing

when the plaintiffs purchased their property and made improvements thereon, but witness Wilhelm testifies that at one point where there was a "hump" the grade was lowered "I imagine from three to four feet at the lower side", although he admits he could be mistaken on this point; and Brown, who was county engineer at the time the road work was done, says the road was lowered at the intersection of Highland Avenue and Waynesburg road, but was not lowered at the point where the walk leading from the front porch of plaintiff's house to the highway ended; so there is doubt and confusion as to where the road was lowered, and how much, and especially as to the effect of such lowering on plaintiffs' property.

It must be clear to all that a mere showing that the road was lowered, without showing some connection between that act and what occurred subsequently, is an insufficient basis for recovery. Counsel for the defendant stress the point that the grade was not lowered and then rely on the law relating to lateral support, contending that the plaintiffs are only entitled to lateral support of their land in its natural state, and not for buildings and improvements placed thereon. The plaintiffs, while not admitting this contention, say that the grade of the road was lowered, and further, that if it was not, the alleged general rule as to lateral support does not apply to cases where property is taken or damaged by public authority, and that under Section 9, Article III of the constitution, they are entitled to all damages resulting from any cause occasioned by the work in which the county court was engaged.

It is an accepted rule of law in this jurisdiction that the change, by a public authority, of an established grade of a street or highway, with reference to which a property owner has made improvements, entitles the owner to damages resulting from such change, both to the property in its natural state, and the improvements thereon. *Johnson* v. *City of Parkersburg*, 16 W. Va. 402, 37 Am. Rep. 779; *Hutchinson* v. *City of Parkersburg*, 25 W. Va. 226; *Blair* v. *City of Charleston*, 43 W. Va. 62, 26 S. E.

341, 35 L. R. A. 852, 64 Am. St. Rep. 837; *Harman* v. *City of Bluefield,* 70 W. Va. 129, 73 S. E. 296; *Jones* v. *City of Clarksburg,* 84 W. Va. 257, 99 S. E. 484; *Harvey* v. *City of Huntington,* 103 W. Va. 186, 136 S. E. 840; *French* v. *City of Bluefield,* 104 W. Va. 129, 139 S. E. 644. A slight qualification of this rule is noted in *Blair* v. *City of Charleston, supra,* and *Jones* v. *City of Clarksburg, supra,* where a limitation is placed as to damages for improvements placed on property after the establishment of a "paper grade", but this exception does not apply to the case before us.

But the rule with respect to lateral support where no lowering grade is involved is not so well settled. As between private owners, the rule seems to be that where one, without negligence, makes an excavation, the owner of the adjoining property is entitled to lateral support for his land in its natural state, but not for structures erected thereon. *Stevenson* v. *Wallace,* 27 Gratt 77; *Tunstall* v. *Christian,* 80 Va. 1, 56 Am. Rep. 581; *Walker* v. *Strosnider,* 67 W. Va. 39, 67 S. E. 1087, 21 Ann. Cas. 1; 1 Minor on Real Property (2d Ed.), sec. 119, p. 158; *French* v. *City of Bluefield, supra.*

There is apparent conflict in our decisions as to whether or not, in view of Section 9, Article III of our state constitution, providing for the payment of compensation where private property is taken or damaged for public use, the rule stated applies. In *Jordan* v. *Benwood,* 42 W. Va. 312, 26 S. E. 266, 36 L. R. A. 519, 57 Am. St. Rep. 859, this court said:

> "The provision, in section 9, art. III, of the Constitution, that private property shall not be taken or damaged for public use without just compensation, does not render a city liable for damages to property from surface water where a private individual would not be liable."

But our ruling in *Kunst* v. *City of Grafton,* 67 W. Va. 20, 67 S. E. 74, 26 L. R. A. (N. S.) 1201, throws doubt on this proposition. *Sun Sand Co.* v. *County Court,* 96 W. Va.

213, 122 S. E. 536, refers to damages to a leasehold estate, and may be distinguished from a case involving an estate in fee; and in *French* v. *Bluefield, supra,* a case where there had been no lowering of grade, it was held that "a municipality is liable for removing lateral support of land in grading its streets", although other language used indicates that the holding is based on the same theory of liability as that invoked where private rights are involved. On the whole, we are disposed to follow the rule of *Jordan* v. *Benwood, supra.* The right vested in the county court in the land covered by its right of way, as respects the use of the land, is not different from that of the private owner who owns his property in fee, and if the private owner is only liable for the removal of lateral support for the land of his adjoiner in its natural state, why should a public authority be held to a more stringent and extensive liability? The purpose and intent of the constitution is carried into effect where the owner of property may require of a public authority the same measure of liability as would be imposed upon a private individual under the same circumstances. If the rule is just as between individuals, it is likewise just as between an individual and the state.

We think the cases of *Blair* v. *City of Charleston, supra,* and *Jones* v. *City of Clarksburg, supra,* sustain this position. Those cases hold that compensation may not be recovered for damages to improvements placed on a lot, occasioned by a change of the street grade, where prior to such improvements on the lot a paper grade for the street has been established. This holding amounts to a limitation on the right to recover, inconsistent with the position that Section 9 of Article III assures to an owner compensation for all damages sustained from the taking or damaging of his property. The constitution undoubtedly requires payment of compensation for private property taken or damaged in a public use, but in the ascertainment of such compensation, we are unable to see any injustice to the property owner, or any violation of the terms or spirit of the constitutional provision, when

we apply the rules of law applicable to litigation between private interests.

We are not satisfied that the liability of the county court was so clear upon the facts of the case, as disclosed by the evidence, as to warrant the trial court in directing the jury to find for the plaintiff. The doubt as to whether the grade of the highway was lowered, the effect on the natural terrain of the increased weight of the improvements and additions to the residence building, the construction of the garage, the heavy wall in the rear, the expansion and lowering of the basement, and the unsatisfactory testimony as to the extent of any slippage or slides, as distinguished from a mere settling of the building occasioned by the added weight, all furnish good reason why a jury should have been permitted to pass upon the question of liability. We do not say that on the case presented the plaintiffs are not entitled to recover; nor that, had the case been submitted to the jury on proper instructions as to the measure of damages and a verdict returned for the plaintiffs, we would feel called upon to set it aside; but we do hold that the case should have been submitted to the jury on the question of liability, and that the giving of plaintiffs' instruction No. 1, insofar as it directed the jury to find for them on the question of liability, was reversible error.

Inasmuch as the case will have to be again tried, and in view of certain statements in the briefs bearing upon the weight to be given to the jury's view of the premises, it may not be amiss to refer to the case of *Thorn* v. *Addison Bros. & Smith,* 119 W. Va. 479, 194 S. E. 771, wherein this question is discussed and the authorities collected. Suffice it to say that a plaintiff must make out his case independently of the view, and the view is primarily for the purpose of enabling the jury to better understand the record evidence.

Plaintiffs' instruction No. 1 given by the court, while not specifically objected to on that ground, incorrectly states the rule by which any damages recoverable in this case must be ascertained. That instruction told the jury

that the damages they should find "would be the amount reasonably necessary to expend to put the property of the plaintiffs in substantially as good condition as it was immediately before the excavation work in question was done."

The correct rule as to the measure of damages in the case before us is laid down in *Jones* v. *City of Clarksburg, supra,* in the following language:

"The true measure of damages to property abutting on a public street, occasioned by a change in the grade thereof is the difference between the value of the property immediately before, and its value immediately after, the street improvement, special or peculiar, but not general, benefits to the property being considered and included in the latter value."

The same principle was announced in *Stewart* v. *Ohio River Rr. Co.,* 38 W. Va. 438, 18 S. E. 604; *Blair* v. *City of Charleston, supra; Harman* v. *City of Bluefield, supra,* decided before the Jones case, was heard, and *Thorne* v. *City of Clarksburg,* 88 W. Va. 251, 106 S. E. 644; *Harvey* v. *City of Huntington, supra,* and *French* v. *City of Bluefield, supra,* which follows the *Jones* case. In the instant case there was testimony of the estimated cost of building a retaining wall, and of repairing the house; there was the testimony of the plaintiff as to how much he was damaged; and there was the testimony of one witness giving his opinion that the value of the property involved had been reduced $2500.00 by reason of the road construction. It is apparent, of course, that the verdict of the jury cannot be sustained on the statement of the only witness who testified on the correct measure of damage.

On the theory that the grade of the road was lowered, the evidence as to costs of repair of the residence and the construction of the retaining wall was properly admitted, but must be subordinated to the rule governing the measure of damages. *Jones* v. *City of Clarksburg, supra.* A verdict which from the record clearly appears

to have been based on evidence as to cost of repairs and improvements, and contrary to the only testimony introduced on diminution of value, the correct measure of damages, cannot stand.

We therefore reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*

MAXWELL and KENNA, JUDGES, concurring in result only:

The reversal meets with our approval because of (a) inadequacy of proof respecting cause of injury to plaintiffs' property, and (b) failure to establish quantum of damages in compliance with rule fixed in *Jones* v. *City of Clarksburg,* 84 W. Va. 257, Syl. 5, 99 S. E. 484. But we do not concur in the lateral support doctrine as applied by the court in the instant case. In our opinion, the law of lateral support, as it obtains between private owners of land, is not the rule applicable where a municipality or county, in improving a highway, has injured private property. By constitutional guaranty, private property, without exception, shall not be damaged for public use without just compensation. That is a rule adamant, whether the property be in its natural state or has buildings thereon. *Jones* v. *City of Clarksburg, supra; Blair* v. *City of Charleston,* 43 W. Va. 62, 26 S. E. 341, 35 L. R. A. 852, 64 Am. St. Rep. 837. The nature of the damage involved, whether by withdrawal of lateral support or otherwise, becomes of secondary importance. The question is, "Was there damage?" Of course, if a paper grade of a street or highway has been established, improvements on abutting private property must be made with reference thereto. But in this case there was no paper grade before plaintiffs' lot was improved.